UNITED STATES GYPSUM COMPANY and others, Appellants, vs. GLEASON and others, Respondents.

*April 17—May 8, 1908.*

*Evidence: Varying written contract: Contract for benefit of third parties: Counties: Building contracts: Protecting third persons: Foreign corporations: Interstate commerce.*

1. A contractor agreed to construct certain portions of buildings for a county and bound himself to pay "all claims for labor performed and materials furnished" for his portion of the work, and gave a bond conditioned for the faithful performance of his contract. *Held,* there being no ambiguity in the agreement, parol evidence could not be received to explain, modify, or contradict it.

2. The fact that such agreement operated to benefit a third party, who did not personally assent to its terms at the time of its inception or before the materials were furnished, would not alter the rule as to the right to modify written agreements by parol evidence.

3. Where a principal contractor bound himself to the faithful per-
   formance of his agreement with a county for the erection of
   certain portions of buildings and to "pay all claims for labor
   performed and materials furnished" for such work, *held* that,
   upon the consummation of the transaction between the imme-
   diate parties, a third person, furnishing materials for such
   work, obtained a right under the contractual terms thus es-
   tablished for his benefit which he could enforce against the
   sureties on the contractor's bond in the same manner and to
   the same extent as if he had personally entered into and as-
   sented to the engagement.
4. The power conferred upon a county, under sec. 604, Stats. (1898),
   to contract for the erection of an insane asylum, includes au-
   thority to make contracts for the benefit of third persons deal-
   ing with immediate contractors of the county, so that such per-
   sons supplying materials may recover therefor under the con-
   tractor's bond to pay all claims for materials furnished.
5. A foreign corporation manufactured brick in Illinois, loaded
   them on cars there, and shipped them, pursuant to a contract
   procured by its traveling salesman in this state and approved
   at the company's home office in Illinois, to a contractor in this
   state, who received them f. o. b. cars at destination. *Held*, that
   the transfer of the brick from the possession and ownership of
   the foreign corporation to the possession and control of the con-
   tractor constituted interstate commerce, in which said corpora-
   tion was entitled to engage without complying with sec. 1770*b*,
   Stats. (1898).

APPEAL from a judgment of the county court of Waukesha
county: M. S. GRISWOLD, Judge.    *Reversed.*

In 1902 and 1903 the county of Waukesha erected an
asylum for the insane.    The contract for the mason and brick
work was awarded to the defendant *Michael Gleason.*    The
work was duly performed and *Gleason* was fully paid by the
county the amount of the contract and his bill for extras.
The plaintiffs severally furnished and supplied *Gleason* with
materials which were used in the erection of the asylum.    It
also appeared that each furnished *Gleason* with materials
which were used by him on other work.    By the findings the
court separated the various items for materials furnished to
*Gleason* and used by him elsewhere from those used in this

work and the amounts due from *Gleason* for materials so furnished him and used in the erection of the asylum. The contract made by the building committee for the county with *Gleason* provided:

"The said *M. Gleason,* party of the first part, further agrees to pay all claims for labor performed and materials furnished in the construction, erection, and completion of the said works for said buildings. It is further agreed that this contract shall have no force or effect until the said *M. Gleason* shall give a good and sufficient bond to the said county of Waukesha, approved by the said building committee and conditioned for the completion of said works for said buildings and faithful performance of this contract and the payment of all claims for labor performed and for all materials furnished in the erection, construction, and completion of the said works under this agreement."

In conformity with the foregoing provision of the contract a bond was given by *Gleason* and the defendants in this action containing the following:

"The condition of this obligation is that if the said *M. Gleason* shall pay all legal claims for labor performed and material furnished in and about the erection, construction, and completion of said works for said building and in and about the performance of his said contract, and shall faithfully perform the terms of said contract on his part to be performed, then this obligation to be void, otherwise to remain in full force and effect."

Plaintiffs bring this action on the foregoing provisions of the contract and bond to enforce payment of the unpaid claims for the materials furnished by them and used in the construction of the building. The court admitted parol evidence of the fact that the defendants did not intend to incur any liability by the bond other than to the county and made a finding to that effect. The court also received parol evidence tending to show that when plaintiffs furnished the materials they did not rely on the bond, but that they furnished them relying on *Gleason's* personal good credit. This is

an appeal from the judgment dismissing the complaint with costs against the plaintiffs.

For the appellants there were briefs by *Glicksman '& Gold,* attorneys, and *C. L. Aarons,* of counsel, and oral argument by *Nathan Glicksman.*

For the respondents there was a brief by *Ryan, Merton & Newbury,* and oral argument by *T. E. Ryan.*

SIEBECKER, J.    The dominant question arising upon the issues and the facts found by the court is: Do the contract and bond, taken together, constitute an obligation whereby the plaintiffs secured the right to demand payment of the sureties for unpaid material furnished by them and used in the buildings constructed by the county?    By the contract the principal contractor bound himself to pay "all claims for labor performed and materials furnished" for the portions of the buildings to be constructed by him.    It was also agreed that his contract should not be effective and binding on the parties until the contractor had given a bond to the county, to be approved by the building committee, conditioned for the faithful performance of the contract and the "payment of all claims for labor performed and for all materials furnished in the erection, construction, and completion of the said works under this agreement."    The contractor, *Gleason,* and the other defendants as sureties, gave a bond to the county, pursuant to this agreement, which was approved by the building committee, and which was conditioned in terms that if the contractor "shall pay all legal claims for labor performed and material furnished in and about the erection, construction, and completion of said works, . . . and shall faithfully perform the terms of said contract on his part to be performed, then this obligation to be void, otherwise to remain in full force and effect."    These stipulations plainly show that the contractor was to pay for the labor and material furnished by him under his agreement to construct a portion of these build-

ings, and they expressly specify that the bond was to be given to secure faithful performance of the contract and the payment of all claims for material furnished and used in the building. The phraseology of these agreements is clear and unambiguous and free from any uncertainty as to its significance. It must be held to express an intention of the parties to the effect that the bond was given to secure payment for any materials furnished and used in the construction of the buildings by *Gleason* in case of his default in this respect. This conclusion is in harmony with all the provisions in the contract and bond. We find no uncertainty or ambiguity in any of their provisions and no conflict between the agreements, when taken together. Since there are no ambiguities in the agreements they can in no way be explained, modified, or contradicted by parol evidence in order to ascertain what obligation the sureties intended to assume. They must be held to have undertaken the obligations embraced in and expressed by the terms of the instruments. It is obvious and clear that they express an intent of the parties to the effect that, upon default by *Gleason* to pay for any of the materials furnished and used in the buildings, then the bondsmen secured payment therefor. *R. Connor Co. v. Ætna Ind. Co.* 136 Wis. 13, 115 N. W. 811; *Wussow v. Hase,* 108 Wis. 382, 84 N. W. 433; *Loper v. Estate of Sheldon,* 120 Wis. 26, 97 N. W. 524.

Under these circumstances no occasion is presented for the reception of parol evidence to ascertain what obligation the sureties in the bond intended to assume under these written contracts. They must be held to be bound by their terms as expressed in the writing. *Johnson v. Pugh,* 110 Wis. 167, 85 N. W. 641; *Newell v. New Holstein C. Co.* 119 Wis. 635, 97 N. W. 487. Nor does the fact that the agreement operated to the benefit of a third party, who did not personally assent to its terms at the time of its inception or before the materials were furnished, alter the rule as to the right to modify

written agreements by parol evidence. *Johnston v. Charles Abresch Co.* 123 Wis. 130, 101 N. W. 395. From this it follows that the court erroneously received parol evidence to explain and modify the plain and express terms of these instruments, and all consideration of such evidence must be omitted. We then have an agreement whereby a promise is made for the benefit of a third party or class. Under such circumstances it is well established by the decisions of this court that upon consummation of the transaction between the immediate parties such third party obtains a right which he can enforce, under the contractual terms thus established for his benefit, in the same manner and to the same extent as if he had personally entered into and assented to the engagement. *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440 ; *Johnston v. Charles Abresch Co., supra; R. Connor Co. v. Ætna Ind. Co., supra.*

The contention is made that the judgment dismissing the complaint should be affirmed upon the ground that the county had no power in law to make such a contract for the benefit of a third party as plaintiffs claim was done in this case. It is conceded that the county was granted the power, under sec. 604, Stats. (1898), to contract for the construction of the building in question; but it is averred that the authority so bestowed on the county includes no authority to make contracts for the benefit of third persons dealing with the immediate contractors of the county. The question of the power of a school district of this state to make such a contract was recently considered in the case of *R. Connor Co. v. Ætna Ind. Co., supra,* and it was there held:

"The authority of the school district to contract for the protection of third persons furnishing material to the principal contractors to be used in the erection of the school building is amply sustained by the adjudications. This authority is one incident to the power given it to erect such a building and to provide for payment therefor."

Such agreements are declared to be promotive of a just protection to such third persons and as operating to protect municipalities by securing more responsible dealers and better materials and as tending to promote justice and equity between all the parties contributing to the erection of such buildings. In addition to the cases there noted as sustaining this doctrine we cite the following cases: *State ex rel. Palmer v. Webster,* 20 Mont. 219, 50 Pac. 558; *Philadelphia v. Stewart,* 195 Pa. St. 309, 45 Atl. 1056; *Lyman v. Lincoln,* 38 Neb. 794, 57 N. W. 531; *Gastonia v. McEntee-Peterson E. Co.* 131 N. C. 363, 42 S. E. 858; *Devers v. Howard,* 144 Mo. 671, 46 S. W. 625; *Am. S. Co. v. Lauber,* 22 Ind. App. 326, 53 N. E. 793.

It is, however, insisted that counties are peculiarly restricted in their powers, and that nothing is implied from a grant of authority to do certain specified things. True, towns and counties exercise no powers except those granted them by law. The same rule applies to municipal corporations. But in ascertaining the extent of a grant authorizing the doing of some specific thing it is to be taken as embracing the authority to do every proper act incident thereto and appropriate in the usual and ordinary course to carry such authority into execution. In the *Connor Case* the power given school districts to construct school buildings and provide for payment therefor was held to embrace the authority to contract for the protection of third persons furnishing materials to the principal contractor. We are unable to discover wherein such a grant of authority to a county is different in its nature and scope from that to a school district or other similar corporations. The reasons supporting the conclusion that the power given to cities, villages, and school districts to construct buildings and provide payment therefor embraces authority to protect third persons furnishing material apply with equal force to cases of counties, and we discover no

grounds why counties should not receive this benefit as an incident to such authority. We are of opinion that the county had power in this case to contract and secure the plaintiffs as provided in the contract and the bond given by defendants. In so far as the adjudications of the state of Minnesota cited to our attention are in conflict with this holding we must refuse to yield assent to them.

Our attention is also called to the case of *Campbell & C. Co. v. Estate of Carnagie,* 98 Wis. 99, 73 N. W. 572, wherein the plaintiff, which had furnished material to the principal contractor for the erection of a state building, sought to impress the fund paid by the state to the contractor's administrator for completion of such building with a trust in its favor, upon the ground that it had an interest in the money paid by the state because it furnished materials used in the building. The court there held that a clause in the contract to the effect that the balance of the contract price should be paid upon the completion of the work, and when its officers were "assured against the existence of any mechanics' liens on the building," was not an agreement intended for the protection and benefit of materialmen, and hence gave them no interest in the money paid to the administrator. The difference in the agreements of that case and the instant one on the subject here involved is so marked that the decision in the former case obviously cannot be treated as an authority for this one. Since, then, the bond here in question secures the persons who furnished materials used in the construction of the county's buildings, it follows that plaintiffs, who furnished material so used and for which the principal contractor has not paid, have the right to enforce payment under the bond by action directly against the bondsmen. This right is well established, though they had no knowledge of the promise when made or had not expressly assented thereto before bringing the action, and the right to enforce such contract for their benefit continues while the

bond is in force. *Tweeddale v. Tweeddale*, 116 Wis. 517,
93 N. W. 440; *Johnston v. Charles Abresch Co.* 123 Wis.
130, 101 N. W. 395; *Fanning v. Murphy*, 126 Wis. 538,
105 N. W. 1056; *Smith v. Pfluger*, 126 Wis. 253, 105 N.
W. 476.

It is averred that the *Illinois Brick Company*, a foreign
corporation, cannot maintain an action for its claim because it
has not complied with the requirements of sec. 1770*b* to en-
title it to do business in this state. This plaintiff asserts
that the business pertaining to the matter involved in this ac-
tion was interstate commerce and hence not subject to the
provisions of this section. As above stated, this is a foreign
corporation, having its place of business at Chicago, Illinois.
The materials furnished by it were manufactured in Illinois
and shipped by it as ordered by the contractor, pursuant to
the contract secured by its traveling salesman at Waukesha
and approved at the home office in Chicago. This contract
provided that it was to furnish the brick at the stipulated
price, "f. o. b. cars, . . . Waukesha, Wis." The brick were
received by the contractor on the cars at Waukesha, he pay-
ing the freight and sending the receipted bill to plaintiff at
Chicago. The plaintiff took no part in the actual transfer of
the brick other than loading them on the cars in Illinois and
shipping them to Waukesha, Wisconsin. The transfer of the
brick from the possession and ownership of plaintiff in Illi-
nois to the possession and control of *Gleason* in Wisconsin
was a transaction which constituted interstate commerce un-
der the federal constitution. This subject has been so re-
cently considered by the court that further elaboration is not
now required. See *Loverin & B. Co. v. Travis*, 135 Wis.
322, 115 N. W. 829; *Greek-Am. S. Co. v. Richardson D.
Co.* 124 Wis. 469, 102 N. W. 888.

Upon these considerations it must be held that the court
erred in dismissing the complaint and awarding judgment in
defendants' favor. The plaintiffs are entitled, upon the

findings made by the court, to judgment against defendants for the amount due for materials furnished by plaintiffs to *Gleason* and used by him in the construction of the asylum buildings, less the payments paid thereon by him, with interest and the costs of this action.

*By the Court.*—Judgment reversed, and the cause remanded to the county court of Waukesha county with directions that the court award judgment to plaintiffs as indicated in this opinion.

TIMLIN, J., took no part.