YAWKEY-CROWLEY LUMBER COMPANY, Respondent, vs. DE LONGE and others, Respondents, and ILLINOIS SURETY COMPANY, Appellant.

*May 4—May 21, 1914.*

*Mechanics' liens: Foreclosure: Parties: Cross-complaint: Bond of contractor: Liability of surety to owner and to subcontractors.*

1. In a statutory action by a materialman to foreclose a mechanic's lien, the owner, the principal contractor and his surety, and other lienors are all proper parties.

2. In such an action a cross-complaint by the owner, alleging in effect the giving of a bond by the contractor and surety conditioned for the faithful performance of the contract, the failure of the contractor to furnish the necessary materials and labor to complete the contract, that the owner was thereby compelled to provide the same at his own expense, and that the amount of the contract price remaining in his hands after the breach of the contract by the contractor is insufficient to compensate him for the damages sustained, states a good cause of action against the contractor and surety.

3. To entitle a third person to maintain an action upon a contract made between other parties, there must not only be an intent to secure some benefit to such third person, but there must be a promise legally enforceable.

4. Subcontractors furnishing labor or materials cannot maintain an action upon a bond given by the principal contractor to the owner, conditioned for the faithful performance of the contract, where neither the contract nor bond contains any express agreement to pay them, but the entire tenor of both instruments shows that the parties intended that the security should be for the benefit of the owner only.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed in part, reversed in part.*

This is an action to foreclose a mechanic's lien on account of materials furnished to the contractor, the *Muskegon Construction & Engineering Company,* and used in the construction of a building for the owner, *O. F. De Longe.* The contractor and the *Illinois Surety Company* entered into a bond

that the contractor would faithfully comply with all the terms and conditions of the construction contract. The owner and the contractor, on the 1st day of October, 1912, made a contract agreeing that the contractor was to erect a business block and remodel a frame building for the owner. By its terms it was stipulated that if at any time any lien or claim for labor or material furnished the contractor be established against the owner, the owner should have the right to retain out of any payment then due or thereafter becoming due an amount sufficient to completely indemnify him against such lien or claim; and that the contractor, after all payments were made on the contract, should refund to the owner all moneys that the latter might be compelled to pay in discharge of any lien on the premises. It is further alleged that the contractor has failed to pay certain persons who furnished material and labor in the construction of the building; that the amount due the plaintiff and other persons who filed liens exceeds in amount the sums due the contractor; that the said owner will be obliged to pay a very considerable sum in excess of the amount called for by the construction contract; and that the *Surety Company* is obligated to pay the claim and lien of the plaintiff. The complaint demands that the rights of all persons having liens upon the premises be adjusted and adjudged, that the premises be sold to satisfy the judgment, and for a deficiency judgment against the contractor and the *Surety Company*.

The *Surety Company* demurred to the complaint.

The cross-complaint of the owner alleged the making of the construction contract and the giving of a bond for its faithful performance as alleged in the complaint, and copies thereof were attached. It further alleged that the contractor failed and refused to complete its contract and abandoned the work; that the *Surety Company* failed to exercise its option of assuring the performance of said contract, although requested so to do; that the owner took possession of the property and

furnished the material and labor necessary to complete the contract; that the owner has been damaged by such default, and charges that the *Surety Company* is obligated to pay for the labor and material the contractor omitted to furnish, and protect the premises against liens and all liability arising out of the performance of the contract. It is also alleged that under the provisions of the bond the *Surety Company* became primarily liable to the plaintiff and all other persons who furnished material and performed labor for erecting the building; that the *Surety Company* was given due and timely notice in writing as required by the bond of the default of the contractor within thirty days from the happening thereof, and that the owner duly complied with the provisions of said contract and bond.

It is further alleged that the owner paid upon architects' certificates the sum of $9,258.61 on the contract, of which $3,213.61 was paid directly to materialmen and to laborers contracted for by the contractor; that the owner subsequently paid out from the amount retained the sum of $1,474.70. He claims liquidated damages in the sum of $2,430, and demands judgment that the balance of the unpaid contract price be applied on the costs and expenses incurred by him in completing the contract, and for the sum of $2,299.01, the excess of his claim above the amount he retained of the contract price, together with the costs and disbursements of the action; and that he have judgment against the *Surety Company* for these unpaid claims, when ascertained, and the expenses incurred by him in connection therewith.

The *Surety Company* demurred to this cross-complaint.

The defendants *Schwoegler* and *Kelly* served a cross-complaint charging they furnished labor and material for the building to the amount of $82.40, for which they claim a lien on the premises, and allege substantially the facts set forth in the complaint and cross-complaint concerning the making of the construction contract, the giving of the bond,

and the contractor's default of payment of their claim, and ask for judgment against him, the *Surety Company,* and the owner.

The *Surety Company* demurred to this cross-complaint.

The trial court overruled the three demurrers, and from this order the defendant *Surety Company* appeals.

For the appellant there was a brief by *Bagley & Reed,* and oral argument by *W. R. Bagley.*

For the respondents there was a brief by *Olin, Butler & Curkeet,* attorneys for the respondent *De Longe,* and oral argument by *W. R. Curkeet.*

SIEBECKER, J.    It is contended in behalf of the *Surety Company* that the court erred in overruling the demurrer to the complaint and the two demurrers to the cross-complaints of the defendants, *O. F. De Longe,* the owner of the building, and of *Schwoegler* and *Kelly,* subcontractors.

The default of the principal contractor, as alleged in the cross-complaint of the owner, under the contract made by him with the *Construction Company* for the furnishing of material and the construction of the building embraced in the contract, constitutes a good cause of action against the *Construction Company* for breach of the contract.    It is also alleged that the defendant *Surety Company* and the defendant contractor made a bond binding themselves to pay the owner $10,300, conditioned that if the contractor "shall well, truly and faithfully comply with all the terms, covenants and conditions of said contract on its part to be kept and performed according to its tenor (except as hereinafter provided), then this obligation to be null and void, otherwise to remain in full force and virtue in law."    The demurrer admits the allegation of breach of this construction contract as set forth in the owner's cross-complaint.    In effect these allegations show a breach of the contract by the *Construction Company* in failing to furnish the material and labor required to erect the

building as provided by the contract, and that the owner was compelled to expend money to furnish the material and labor to complete the contract pursuant to the stipulation thereof; that he suffered damages from the *Construction Company's* breach of the contract, and that the amount of the contract price remaining in his hands after the breach of the contract by the contractor is not sufficient to pay his disbursements to complete the contract and to pay him the damages he sustained and stipulated for in the contract, resulting from such breach of the contract. Under these circumstances it is manifest that the owner's cross-complaint states a good cause of action against the contractor and its surety. Since this is an action by the plaintiff to foreclose a mechanic's, laborer's, and materialman's lien provided by statute, the owner, the principal contractor, the *Surety Company,* and other lienors were all proper parties to this action. *Warren Webster & Co. v. Beaumont H. Co.* 151 Wis. 1, 138 N. W. 102. We are of the opinion that the allegation of the cross-complaint of the owner as a party to the construction contract states a good cause of action against the defendant, the principal contractor, and the *Surety Company* as its surety.

The question raised by the demurrer of the *Surety Company* to the complaint of the plaintiff, a subcontractor, and to the cross-complaint of the defendants *Schwoegler* and *Kelly* as subcontractors, for furnishing labor and material to the principal contractor, involves claims of a more uncertain nature than those raised by the demurrer to the owner's cross-complaint. The ground of demurrer is that the facts alleged by the subcontractors in their complaints do not constitute a cause of action against the *Surety Company.*

In the case of *United States G. Co. v. Gleason,* 135 Wis. 539, 116 N. W. 238, it was held that where the principal contractor bound himself to the faithful performance of his agreement for the erection of a certain building and "to pay all claims for labor performed and material furnished," other

persons furnishing material for such work, which was not paid for by the principal contractor, obtained a right under the contract for their benefit which they could enforce against the surety on the contractor's bond. In the cases of *Warren Webster & Co. v. Beaumont H. Co.* 151 Wis. 1, 138 N. W. 102, and *R. Connor Co. v. Ætna Ind. Co.* 136 Wis. 13, 115 N. W. 811, it was likewise held that the provisions of the construction contracts and bonds given to secure faithful performance were intended by the parties to secure payment for the labor and material furnished and conferred the right on the laborers and materialmen to compel payment by the surety. In the latter case the surety relied on the case of *Electric A. Co. v. United States F. & G. Co.* 110 Wis. 434, 85 N. W. 648, as controlling, and that the surety, under the principle of that decision, was not liable to the subcontractor; but the court there pointed out that the acceptance of a bond without a condition for the payment of the claims for material as provided in the principal contract, showed a waiver of such stipulation as regards the surety.

In the *Electric Appliance Case* the court declares that in this jurisdiction the cases do not "sustain the proposition that the third party can maintain an action against an alleged promisor based upon an implied promise to pay;" and further: "We consider the true rule to be that there must not only be an *intent* to secure some benefit to the third party, but there must be a promise, legally enforceable. The contract and bond in this case fail to meet these requirements. The situation presented shows a want of any intent to secure a benefit to third parties." We refer to this case at length to show that the subsequent cases on the same subject in this court, cited above, are in accord and harmony with this case, it being therein determined that the contracts and bonds of the parties showed an intent to secure such benefit to the third parties, and that a legally enforceable promise existed. The *Electric Appliance Case* was referred to in *Lenz v. C. & N.*

*W. R. Co.* 111 Wis. 198, 204, 86 N. W. 607, decided soon thereafter, and it was there declared that "The insufficiency of the bond under consideration in that case was that it did not require or promise any payment to the materialmen seeking to enforce it, merely protection to the obligee party; hence, of course, there was no apparent intent to benefit the materialmen."

Applying the rule thus established by the adjudications in this jurisdiction to the instant case the question is: Does the contract of the principal contractor and the owner and the bond given for its faithful performance show that it was intended that subcontractors furnishing labor or material for the erection of this building to the principal contractor should have the benefit of the bond given to secure faithful performance of the construction contract and promise payment to them? A consideration of the provisions of the contract and bond leads us to the conclusion that it was intended that the bond should be a protection only to the obligee party, *O. F. De Longe.* The contract and bond are a part of the complaint. It appears that the contractor was to provide all the materials and perform all the work required to erect and remodel the portions of the buildings embraced in the plans and specifications, made a part of the contract. It was provided that, in case of discontinuance of the contract for any of the grounds specified, no further payment should be due the contractor until the buildings were completed, and that the owner should be liable to the contractor for any balance remaining due him in excess of the expenses incurred by the owner in finishing the work, and that "such excess shall be paid by the owner to the contractor;" and that such balance or excess of expense shall be adjusted by the architect between the contractor and the owner. It is also stipulated that the owner shall have the right to deduct from any amount due the contractor his damages, and it is expressly agreed that if there shall be any lien or claim for which the owner is legally liable and which arises from obligation of the contractor, the

owner is to retain out of any amount due the contractor a sum sufficient to indemnify himself against such lien or claim. The bond expressly stipulates that the surety shall be subrogated to its principal's rights in case of any default and to all claims it may have against the owner and to any amount due its principal from the owner under the contract. The tenor of all the agreements in the contract and bond shows that the parties intended the security should be for the benefit of the owner only, and that laborers and materialmen were not to be benefited thereby, nor was there a promise of payment of their demands. Under these conditions of the contract and bond the security is only protection to the obligee named therein; and subcontractors and laborers of the contractor obtained no right which they can enforce against the surety, and hence they have no cause of action against the surety upon their complaints, and the demurrers of the *Surety Company* to the complaints of these subcontractors and laborers must be sustained.

*By the Court.*—The order overruling the demurrer to the cross-complaint of *O. F. De Longe* is affirmed, and is reversed as to the demurrers to the plaintiff's complaint and the cross-complaint of the defendants *Schwoegler* and *Kelly,* and it is ordered that the demurrers to the complaint and cross-complaint of the subcontractors be sustained.