BUILDERS LUMBER & SUPPLY COMPANY, Respondent, vs. CHICAGO BONDING & SURETY COMPANY, Appellant.

*January 9—April 3, 1918.*

*Contractor's bond: Municipal work: Rights of materialmen and laborers: Suretyship: Construction of contract: Instruments construed together: "Express" agreement: "Subcontractor:" Waiver of rights.*

1. Where a contractor's bond expressly obligates the signers thereof to pay for the material and labor entering into the construction called for by the contract, materialmen and laborers may maintain an action against the sureties.

2. The doctrine that contracts of suretyship are to be strictly construed and the liability of the sureties is not to be extended by implication or presumption, does not mean, even as to ordinary sureties, that such contracts are not to be reasonably interpreted as other contracts are.

3. A contractor's bond given by a surety company for a money con-

sideration has all the essential features of an insurance contract and is not to be construed according to the rules applicable to ordinary accommodation sureties.

4. Where the bond of a contractor for municipal work is conditioned that he shall "fully and faithfully perform all the conditions and covenants contained in the contract," and in the contract he covenants to "pay in full for all labor employed and materials used," the two instruments must be construed together and the surety is thereby as "expressly" bound to pay for labor and materials as if this were stated in the bond itself.

5. The fact that one who merely furnishes materials to a contractor does so under a written contract does not affect his status as a materialman or make him a "subcontractor" in such a sense that he is not within the protection of a surety bond which secures payment for materials.

6. A materialman did not waive his rights under such a bond by continuing to furnish materials after the contractor's default in making certain payments when due, there having been no modification of contract, extension of time, or other agreement, act, or omission which released the surety.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

On the 30th day of March, 1916, Thomas Cerney and Charles Frey, copartners, residents of the state of Illinois and doing business under the firm name of Conducive Paving Company, entered into a contract with the city of Wausau for the construction and laying of a certain paving in that city, and to assure the faithful performance of that contract said Conducive Paving Company made and executed to the said city of Wausau a bond with the defendant *Chicago Bonding & Surety Company* as surety.

Pursuant to a contract made with the said Conducive Paving Company on the 16th day of February, 1916, the plaintiff herein, *Builders Lumber & Supply Company,* during the months of August and September, 1916, sold and delivered to said Conducive Paving Company certain materials consisting of lumber, cement, and brick for use in the performance of its said contract with said city, which said materials were so used.

This action is brought by the said *Builders Lumber & Supply Company* against the *Chicago Bonding & Surety Company* to recover an unpaid balance due to it from said Conducive Paving Company on account of such material so furnished and delivered. The defendant interposed a demurrer to the complaint, which demurrer was overruled. The defendant then answered, and upon a trial of the case judgment was rendered in favor of the plaintiff. From this judgment defendant appealed. Such portions of the contract and bond as are pertinent to the liability of the *Surety Company* in this action are sufficiently referred to in the opinion.

*William L. Tibbs,* attorney, and *Daniel W. Sullivan,* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by *Kreutzer, Bird, Okoneski & Puchner* of Wausau, and oral argument by *C. B. Bird.*

The following opinion was filed February 5, 1918:

OWEN, J. It is the main contention of appellant that by signing the bond in question it assumed no liability in behalf of laborers or materialmen, and the questions now presented are practically the same as those raised by the demurrer to the complaint, the principal one being whether appellant in signing the bond became obligated to laborers and materialmen for work and material performed and furnished by them.

It is well settled in this jurisdiction that where a contractor's bond expressly obligates the signers thereof to pay for the material and labor entering into the construction called for by the principal contract, those furnishing material for, or bestowing labor upon, such construction may maintain an action therefor against the sureties on the bond. *United States G. Co. v. Gleason,* 135 Wis. 539, 544, 116 N. W. 238; *R. Connor Co. v. Ætna I. Co.* 136 Wis. 13, 18,

115 N. W. 811; *Warren Webster & Co. v. Beaumont H. Co.* 151 Wis. 1, 10, 138 N. W. 102; *Concrete S. Co. v. Ill. S. Co.* 163 Wis. 41, 44, 157 N. W. 543.

Appellant insists that, in determining the question whether or not the bond contains a covenant for the benefit of parties other than the city of Wausau, all reasonable doubts which may arise on a reading of the bond must be resolved in favor of the surety and against the claim of increased liability; that sureties are favorites in the law, and a contract of suretyship must be strictly construed to impose upon the surety only those burdens clearly within its terms and must not be extended by implication or presumption.   We recognize this rule as applied to ordinary sureties, but even as to this rule so applied it has been said:

"While it is true that a surety cannot be held beyond the express terms of his contract, yet, in interpreting the terms of a contract of suretyship, the same rules are to be observed as in the case of other contracts.   Such construction does not mean that words are to be distorted out of their natural meaning, or that, by implication, something can be read into the contract that it will not reasonably bear; but it means that the contract shall be fairly construed, with a view to effect the object for which it was given, and to accomplish the purpose for which it was designed.   The old rule of *strictissimi juris* applies only to the extent that no implication shall be indulged in to impose a burden not clearly inferable from the language of the contract, but does not apply so as to hold that the contract shall not be reasonably interpreted as other contracts are."   *Sather B. Co. v. Arthur R. Briggs Co.* 138 Cal. 724, 72 Pac. 352.

It has also been held by this and other courts that a bond of the kind involved in this case, given for a money consideration, has all the essential features of an insurance contract, and that it is not to be construed according to the rules of law applicable to the ordinary accommodation surety. *First Nat. Bank v. United States F. & G. Co.* 150 Wis. 601, 137 N. W. 742, and cases there cited.

By the terms of the bond in question appellant acknowledges itself bound to the city of Wausau in the sum of $20,000, the condition thereof being stated as follows:

"Whereas, the above bounden Conducive Paving Company has made to the city of Wausau a proposal in writing to furnish all the material and do all the work necessary to paving Grand and Forest avenues in said city, in accordance with the plan, profile, details, and specifications on file in the office of the city clerk of said city:

"Now, therefore, the condition of this obligation is such, that if the above bounden Conducive Paving Company, the said contract being awarded to them, shall fully and faithfully perform all the conditions and covenants contained in the contract as well as the provisions contained therein or other guaranty of such work, and shall refund to said city of Wausau all sums which it may be obliged or adjudged to pay on any claim or demand for damages as provided in said contract, then this bond to be void, otherwise in full force and effect."

Note the provision *"that if the above bounden Conducive Paving Company . . . shall fully and faithfully perform all the conditions and covenants contained in the contract,"* etc., "then this bond to be void, otherwise in full force and effect." The bond is to be void if, and only if, the Conducive Paving Company "shall fully and faithfully perform all the conditions and covenants contained in the contract." What are those conditions and covenants? They are not recited in the bond. We cannot ascertain the scope, extent, or nature thereof by confining ourselves to an inspection of that document. Obviously we must turn to the contract to find the extent and nature of appellant's obligations. In other words, the contract and bond must be construed together.

Turning now to the contract between the city and the Conducive Paving Company, we find not only the usual provision that "the contractor hereby agrees to and with said city to furnish all the material and do all the work necessary to complete said pavement," but in a remote part of the con-

tract, as a distinct and special agreement, occurs the following:

"And the said contractor hereby guarantees, covenants, and agrees to and with the said city of Wausau, that he will well and truly execute and perform this contract on his part, under the superintendence and to the satisfaction of the said board of public works, *and will pay in full for all labor employed and material used in the performance of this contract,* and that said contractor further covenants and agrees to protect and hold said city harmless against all actions and claims or demands for damages of any kind or character whatsoever, which may arise from carelessness, neglect, or otherwise, or which may accrue under the Workingman's Compensation Act of the state of Wisconsin, in the prosecution of said work."

If that was not deliberately intended for the benefit of third parties—for the benefit of materialmen and laborers—why was it inserted? It was already provided that the contractor should furnish the material and labor for the construction of the work. It was not necessary for the avoidance of mechanics' liens, because the property of a municipality is not subject thereto. It was not necessary to make the contractor personally liable to laborers and materialmen, because that liability would arise from the contracts of employment of laborers and purchase of materials. We cannot assume that this provision was introduced into the contract for its resounding effect or for an idle purpose. It is highly commendable on the part of municipalities to secure protection for those who render services and furnish materials in and about the construction of their public works. Indeed it is good business policy for them to do so.

"Such agreements are declared to be promotive of a just protection to such third persons and as operating to protect municipalities by securing more responsible dealers and better materials and as tending to promote justice and equity between all the parties contributing to the erection of such buildings." *United States G. Co. v. Gleason,* 135 Wis. 539, 545, 116 N. W. 238.

It has been said that there is a moral obligation on the part of a municipality to see that the material and labor entering into the construction of the work which is the subject of the contract is paid for, and that this moral obligation is a sufficient consideration to support a contract for the benefit of third parties. *Knight & Jillson Co. v. Castle,* 172 Ind. 97, 87 N. E. 976. We see no reason to doubt that the provision in question was inserted in the contract for the purpose and with the intent on the part of both parties of securing protection to laborers and materialmen dealing with the contractor. This protection could be secured only through the bond required by the city to assure faithful performance of the contract. The bond was signed by the surety with full knowledge of this intent and purpose—at least it cannot be heard to claim otherwise. By its terms it does assure the full and faithful performance of each and every agreement of the contract. If this is not the import of the language of the bond, we are at a loss to know what covenants are not included within its protection. If the covenant that the contractor will pay in full for all labor employed and material used in the performance of the contract is not within the protection of the bond, how are we to determine the particular covenants of the contract that do fall within its protection?

Counsel for appellant seem to be of the opinion that in order to constitute liability on the part of the surety for claims due third parties there must be a specific and express provision to that effect written into the bond itself, and in support of that position they cite us to cases which hold that an agreement made between two persons for the benefit of a third, to be enforceable by such third person, must be express. The word "express" in such connection is used, of course, in contradistinction to "implied." As said in *Arnold v. Randall,* 121 Wis. 462, 465, 98 N. W. 239, such an agreement "could not arise from any mere implication or legal imputation." It happens, also, that in the cases

above cited where the surety was held liable at the suit of laborers and materialmen there was a specific reference thereto in the bond itself. But neither the principle that such an agreement must be express, nor the circumstance that in the cases decided by this court holding the surety liable to third parties such a provision occurred in the bond itself, nor both together, can operate to exempt appellant from liability here. The contract and bond, construed together, expressly bind the appellant *Surety Company* to pay for the material and labor entering into the construction of the paving called for by the contract between the city and the paving company as efficiently and potently as though it were specifically stipulated in the bond. Resort to implication or inference is unnecessary. Such is the plain meaning of the language employed. Similar contracts and bonds frequently have received like construction. *Knight & Jillson Co. v. Castle,* 172 Ind. 97, 87 N. E. 976; *Jordan v. Kavanaugh,* 63 Iowa, 152, 18 N. W. 851; *Wells v. Kavanaugh,* 70 Iowa, 519, 30 N. W. 871; *Lyman v. Lincoln,* 38 Neb. 794, 57 N. W. 531; *Sample v. Hale,* 34 Neb. 220, 51 N. W. 837; *Fitzgerald v. McClay,* 47 Neb. 816, 66 N. W. 828; *W. P. Fuller & Co. v. Alturas School Dist.* 28 Cal. App. 609, 153 Pac. 743; *Sailling v. Morrell,* 97 Neb. 454, 150 N. W. 195.

The conclusion reached brings the case squarely within the doctrine of those cases first cited, wherein the sureties were held bound to materialmen and laborers, and disposes of appellant's principal contentions.

Appellant suggests that plaintiff was a subcontractor and not a materialman and, therefore, was not within the protection of the bond. The only thing plaintiff did was to furnish the contractor with certain materials entering into the construction of the paving. It is clearly one of those protected by the bond. The fact that the materials were furnished pursuant to written contract does not affect its

Builders L. & S. Co. v. Chicago B. & S. Co. 167 Wis. 167.

status as a materialman nor convert it into what is generally understood by the term "subcontractor." We do not mean to imply, however, that it would necessarily be without the protection of the bond even though it were a subcontractor.

Appellant makes the further claim that plaintiff waived its rights under the bond by continuing to furnish material to the contractor after the latter had defaulted in making certain payments when due. Upon this point the trial court found:

"There has been no delay, modification of contract, extension of time, or other agreement or act, or omission, which has released the obligation of said bond or the right of the plaintiff to recover thereon for the unpaid balance due it for the goods so used in the performance of the contract mentioned, nor has there been any act which in any manner estops this plaintiff from bringing and maintaining this action."

We fully approve of this finding of the trial court.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.

ROSENBERRY, J., took no part.

A motion for a rehearing was denied, with $25 costs, on April 3, 1918.