YAWKEY-CROWLEY LUMBER COMPANY, Plaintiff, vs. SIN-AIKO and others, Defendants: SINAIKO, Appellant, vs. HUSTAD, Respondent.

*December 10, 1925—March 9, 1926.*

*Mechanics' liens: Building contract and performance bond: Construction: Amounts due for labor and material: Rights of third persons: Failure of contractor to furnish bond: Breach of contract: Failure to pay for labor and materials: Rights of owner.*

1. Under the terms of a building contract and a performance bond (both set out in the opinion), the substantial failure of the contractor to pay for labor and material is *held* a substantial failure on his part under the contract, for which default the surety is liable.  p. 302.
2. Where the contract required a bond for performance of the work and against mechanics' liens, a bond conditioned for the payment of all amounts due for labor and material is not a variation from the requirements of the contract, which was expressly made part of the bond.  p. 303.
3. The owner of a building who paid the obligations of the contractor for labor and material left unpaid by him becomes subrogated to the rights of the materialmen so paid, as against the contractor and his surety on the bond.  p. 303.
4. A bond conditioned on payment of the amounts due for labor and material as well as the completion of the contract creates obligations in favor of third persons furnishing labor and material; and the fact that the surety was a gratuitous surety is immaterial.  pp. 303, 304.

5. Failure of the contractor to furnish the bond required of him under the contract excuses payment of the instalments due on the work until such bond was furnished.   p. 304.

6. Where the contractor became financially embarrassed and was unable to pay claims for material and labor, and was in default as to progress with the work, the owner is *held* to have been justified in taking over the work and in refusing further payments to the contractor.   p. 304.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.   *Reversed.*

Defendant Lofthus, a contractor, and defendant *William Sinaiko,* an owner, made a written contract on and dated October 1, 1921, but which was not signed by them until December 20th.   Work was commenced, however, early in October.

It provided that the contractor, for and in consideration of the payments to be made by him by the owner, agrees to erect a three-story flat building in Madison; that the "contract shall include the entire completion of the building" (with certain excepted matters to be furnished by owner); that the owner, "for and in consideration of the contractor completely and faithfully executing the aforesaid work and furnishing all the labor and materials therefor (except as aforesaid), so as fully to carry out" said agreement, etc., did thereby agree to pay said contractor $11,150 as follows:

$3,000 when the interior plastering is completed.

$1,000 when the exterior plastering is completed.

$500 respectively, upon the completion of the interior woodwork for each floor.

$2,650 balance, on entire completion.

In October and November written notice was given to the owner that materials were being furnished by third persons for such building.   December 15th the roof was completed.   By that time the owner had advanced to the contractor or on his orders $1,423, and on December 16th an additional $500.   Considerable obligation had then been in-

curred by the contractor to others for labor and materials; he was financially embarrassed and had failed and continued to fail to prosecute the work with due diligence.

On January 12, 1922, defendant *Hustad* signed as surety with the contractor the surety bond concerning which this appeal is taken and quoted from hereinafter.

Early in February the owner gave the written notice provided for in the contract of intention to take over the work for the delay and default in the contract. Thereafter he did so, employing the contractor on the work. The building was completed by July 1st instead of April 1st as specified. The total expense was largely in excess of the contract price. Numerous claims for liens were filed and this action brought to foreclose them. Defendant *Sinaiko* by cross-complaint sought relief against Lofthus and *Hustad* on the contract and bond.

On the trial the court found so far as material to this appeal, which concerns said cross-complaint alone, as follows:

That *Hustad* executed the bond without receiving any consideration.

That no laborer or materialman is shown to have relied upon said bond or sustained any disadvantage which might be a consideration for said bond.

That before the signing of the bond defendant *Sinaiko* made no statement to and *Hustad* made no inquiry of *Sinaiko* as to the contractor's progress.

That defendant Lofthus unreasonably delayed the work after December 15th though repeatedly urged to expedite it and to furnish said bond.

That such delay was justification for the owner giving the notice and taking over and completing the work.

"That the failure, after the bond was given, to pay the amount required by the contract to be paid when the roof was completed was a material and substantial variation from the terms of the contract, which prejudiced the rights of the

defendant *Hustad* as surety on said bond, because it deprived defendant Lofthus of money belonging to him without which he could not pay the men, who would not continue to work without pay."

That defendant *Sinaiko* paid Lofthus $1,923, and was entitled to credit for that and certain allowances in the amount of $2,508, was entitled to $450 against Lofthus for the delay, and had paid $9,333.34 to others for labor and materials.

The judgment denied relief to *Sinaiko* as against *Hustad* and gave the latter costs. From such part of the judgment *Sinaiko* appeals.

For the appellant there was a brief by *Curkeet, Lewis & Sanborn* of Madison, and oral argument by *William R. Curkeet.*

For the respondent there was a brief by *Tenney, Reynolds & Davis* of Madison, and oral argument by *Edward J. Reynolds.*

The following opinion was filed January 12, 1926:

ESCHWEILER, J. By the terms of the contract the contractor was bound to "furnish a surety bond acceptable to said owner in the sum of $8,000 for the proper completion and faithful performance of all of the work provided for in this contract, *as well as against mechanics' liens for labor or materials.*"

The bond signed by Lofthus and *Hustad,* after the usual formal clause with penalty in the sum of $8,000, recited the making of the contract October 1, 1924, wherein Lofthus agreed to build for *Sinaiko* the said building "of such kind and for the consideration therein mentioned." Then the condition was that if Lofthus "shall well and truly perform his part of the building contract above referred to according to its true meaning and intent, *and pay all of the amounts due for labor and materials required of him under said building contract* of said October 1, 1921, a true copy of

said building contract being hereto attached, then this obligation to be void," etc.

It is here undisputed that the contractor did not perform his part of the building contract; he did not pay all amounts due for labor and material, and the owner did pay substantial amounts in excess of the contract price for such labor and materials. Among the conditions found in the contract, which contract was expressly made a part of the bond, was the obligation of the contractor, recited in the statement above, that in consideration of the obligation of the owner to pay the contract price, he, the contractor, would furnish all the labor and materials required of him. This he could not do or furnish, under the spirit and meaning of such a clause, unless he paid for such labor and materials. This payment for labor and material by the contractor was what the owner was agreeing to pay for in the contract price. This substantial failure by the contractor to pay for the labor and material was a substantial failure by the contractor under the contract, and the plain letter of the bond rendered the surety liable for such default.

It is urged that the condition of the bond being apparently broader in its terms, as indicated by a comparison between the language of the contract, and particularly that part thereof italicised at the head of this opinion, with the italicised clause of the bond just above quoted, so that something more was required by the bond as executed in January, 1922, than was demanded by the contract of October 1st, and that as to such additional requirement, if any, there was no consideration, and for that reason, and also because the refusal by the owner after the bond was signed to pay the contractor the balance between the $1,923 already advanced and the $3,000 due under the contract when the roof was completed on December 15th being considered a substantial breach of the contract by the owner, the surety was relieved from any liability.

We cannot construe the bond as being a variation from that which was required under and by the conditions of the contract.   The letter of the bond requires complete performance by the contractor of the things required of him under the contract, the contract was expressly made a part of the bond, and the surety is bound to take notice of all that is required of the contractor in such contract.   The two must be construed together.   *Building Contractors' L. M. L. Ins. Co. v. Southern S. Co.* 185 Wis. 83, 87, 200 N. W. 770; *Builders L. & S. Co. v. Chicago B. & S. Co.* 167 Wis. 167, 174, 166 N. W. 320.

That the claims of those whom the owner paid for labor and material did not ripen into formal mechanics' liens so as to comply with the phrase in the contract concerning the bond and relating to such mechanics' liens, is not at all material or controlling or in any way limits the liability of the surety.   Upon the payment by the owner of the obligations of the contractor for labor and material left unpaid by him, such contractor, the owner clearly became subrogated to the rights of those whose labor and material were thus paid for as against the contractor and his surety on this bond.   That such a bond does create an obligation in favor of third persons furnishing labor and material to such contractor has been too often held to now need discussion. *U. S. Gypsum Co. v. Gleason,* 135 Wis. 539, 542, 116 N. W. 238; *R. Connor Co. v. Ætna Ind. Co.* 136 Wis. 13, 18, 115 N. W. 811 (in which is distinguished the case relied upon in the court below of *Electric A. Co. v. U. S. F. & G. Co.* 110 Wis. 434, 85 N. W. 648) ; *Warren Webster & Co. v. Beaumont Hotel Co.* 151 Wis. 1, 10, 138 N. W. 102; *Concrete S. Co. v. Illinois S. Co.* 163 Wis. 41, 44, 157 N. W. 543; *Builders L. & S. Co. v. Chicago B. & S. Co.* 167 Wis. 167, 170, 166 N. W. 320; *Building Contractors' L. M. L. Ins. Co. v. Southern S. Co.* 185 Wis. 83, 200 N. W. 770.

Under the plain language of the bond, that the obligation of the surety is that the contractor will pay all the amounts due for labor and materials required of him under the contract, as well as the condition that there shall be full and complete performance of the contract, which by its terms, in effect, requires the same thing, we can see no escape from liability of the surety for any amounts, not in excess of the sum of $8,000, which were properly paid by the owner in excess of the contract price in the completion of the work. That here was a gratuitous as distinguished from a paid surety cannot permit the ignoring of unambiguous language such as is here presented in the bond itself.  There is here no opportunity to indulge in strict or liberal construction—it permits but of plain construction.

There is no question here under the record but that the owner was justified in giving the notice under the contract and taking over the work on account of the default of the contractor from and after the completion of the roof on December 15, 1921.  No question can be raised but that the trial court was correct in his view that although the contract required the payment of $3,000 when the roof was completed, nevertheless the failure by the contractor to furnish the bond required of him until January 12, 1922, excused the payment of any unpaid balance of the $3,000 until such bond was furnished.  At such time, that is, of the furnishing of the bond, the contractor had been paid directly or on his orders $1,923.  At this time in January there were already additional obligations incurred and unpaid of over $2,900, making a total then greatly in excess of the first payment.  The contractor was also then sadly in default as to his progress with the work and to such an extent that the owner was fully justified in his notice, about two weeks later, of his election to take over the work.  Under such a situation as was presented to the owner at that time we are satisfied that he was fully justified in refusing to make further payments directly to the contractor, because thereby

his own rights, those of the third persons to whom the contractor was then so largely indebted, and those of this surety would be seriously jeopardized.

We therefore hold that his action in that regard was not such a breach of the obligation of the contract on his part as relieved the surety on the bond, for a breach to so relieve a surety must be substantial and prejudicial. *Lloyd Inv. Co. v. Illinois S. Co.* 164 Wis. 282, 287, 160 N. W. 58.

*By the Court.*—Judgment reversed, with directions for further proceedings in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on March 9, 1926.