BATES EXPANDED STEEL TRUSS COMPANY, Plaintiff, vs. SISTERS OF MERCY OF JANESVILLE and another, Defendants and Appellants, WORDEN-ALLEN COMPANY and others, Defendants and Respondents.

*May 11—June 20, 1932.*

For the appellants there were briefs by *James E. Coleman* of Milwaukee, attorney for the Commercial Casualty

Insurance Company, and *Nolan, Dougherty, Grubb & Ryan* of Janesville, attorneys for Sisters of Mercy, and oral argument by *Mr. Coleman*.

*F. C. Burpee* of Janesville, for the respondents Ward Brothers.

For the other respondents there was a brief by *Bottum, Hudnall, Lecher, McNamara & Michael* of Milwaukee, attorneys for Worden-Allen Company; *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville, attorneys for the Solie Lumber Company; and *Richardson & Dunwiddie* of Janesville and *Charles J. Friend* of Milwaukee, attorneys for the Chamberlain Metal Weather Strip Company; and the cause was argued orally by *Suel O. Arnold* of Milwaukee and *Otto Oestreich*.

FRITZ, J.    The underlying question which affects the claims of all of the subcontractors and materialmen on this appeal is whether the Commercial Casualty Insurance Company, as surety for Krasin Brothers, the principal contractors, is liable for the indebtedness which is owing by Krasin Brothers for labor and materials furnished in erecting a building on premises owned by the Sisters of Mercy, but for which indebtedness there exists no lien or claim for which the owner of the premises is liable.   The contract between Krasin Brothers and the owner provided that—

"The contractor shall and will provide all materials and will perform all the work . . . as shown on the drawings and described by the specifications prepared . . . and become hereby a part of this contract."

The specifications, which by those words in the contract were made a part of the contract, provided:

"The contractor shall furnish and pay for a good and sufficient bond . . . conditioned upon the faithful performance of his contract and the payment of all claims for labor

performed or materials furnished in and about the completion of his contract."

That requirement in the specifications was not complied with. The surety bond, which was furnished and accepted by the owner, was not, as prescribed by the specifications, conditioned upon the payment of all claims for labor or materials. Instead, the provision of the bond was merely as follows:

"The conditions of this bond are such that if said parties of the first part (Krasin Brothers) shall faithfully keep and perform the within contract and duly execute and perform all and several the undertakings and agreements therein contained, by them to be executed and performed, then this obligation shall be void, otherwise of full force."

Consequently, neither the contract nor the bond, upon which the subcontractors and materialmen now rely to hold the surety, expressly provided that the contractor or the surety agreed to pay all claims for labor or materials furnished. The only provision in either the contract or the bond as to the payment of claims chargeable to the contractor is as follows:

"Article IX. If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify it against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor in default."

It must be noted that that provision relates only to "any lien or claim for which . . . the owner . . . might become liable and which is chargeable to the contractor." It is only

as to such liens or claims that the contract provides that "the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien." If no such liens or claims exist in favor of the subcontractors or materialmen, who are still parties to this action,—if the only claims now involved herein are claims for which the owner does not become liable, and which the owner cannot be compelled to pay,—then they are not within the class of indebtedness to which that art. IX of the contract relates.

Under those facts and circumstances this case is ruled by the decisions in *Electric Appliance Co. v. United States F. & G. Co.* 110 Wis. 434, 85 N. W. 648; *Yawkey-Crowley L. Co. v. De Longe,* 157 Wis. 390, 147 N. W. 334. In the case at bar as in those cases, the fact that the owner accepted a bond, which was not in compliance with the specifications in that it did not require the payment of all claims for labor and material, was clearly a waiver of that requirement in the specifications as to the obligations of the proposed bond, and resulted in the abandonment or relinquishment of that requirement in the specifications. The following excerpts from the opinion in *Yawkey-Crowley L. Co. v. De Longe, supra,* are directly applicable in the case at bar:

"Does the contract of the principal contractor and the owner and the bond given for its faithful performance show that it was intended that subcontractors furnishing labor or material for the erection of this building to the principal contractor should have the benefit of the bond given to secure faithful performance of the construction contract and promise payment to them? A consideration of the provisions of the contract and bond leads us to the conclusion that it was intended that the bond should be a protection only to the obligee party, O. F. De Longe. The contract and bond are a part of the complaint. It appears that the contractor was to provide all the materials and perform all the work required to erect and remodel the portions of the

buildings embraced in the plans and specifications, made a part of the contract. . . . It is also stipulated that the owner shall have the right to deduct from any amount due the contractor his damages, and it is expressly agreed that if there shall be any lien or claim for which the owner is legally liable and which arises from obligation of the contractor, the owner is to retain out of any amount due the contractor a sum sufficient to indemnify himself against such lien or claim. . . . The tenor of all the agreements in the contract and bond shows that the parties intended the security should be for the benefit of the owner only, and that laborers and materialmen were not to be benefited thereby, nor was there a promise of payment of their demands. Under these conditions of the contract and bond the security is only protection to the obligee named therein; and subcontractors and laborers of the contractor obtained no right which they can enforce against the surety, and hence they have no cause of action against the surety upon their complaints, and the demurrers of the surety company to the complaints of these subcontractors and laborers must be sustained."

This court has adopted a liberal policy in respect to the right of subcontractors, who furnished labor or materials to a principal contractor, to recover from a paid surety the indebtedness owing to them by the principal contractor. *United States G. Co. v. Gleason,* 135 Wis. 539, 116 N. W. 238; *R. Connor Co. v. Ætna Indemnity Co.* 136 Wis. 13, 115 N. W. 811; *Warren Webster & Co. v. Beaumont Hotel Co.* 151 Wis. 1, 138 N. W. 102; *Concrete Steel Co. v. Illinois Surety Co.* 163 Wis. 41, 157 N. W. 543; *Milwaukee B. S. Co. v. Illinois Surety Co.* 163 Wis. 48, 157 N. W. 545; *Builders L. & S. Co. v. Chicago B. & S. Co.* 167 Wis. 167, 166 N. W. 320; *New York C. J. F. Co. v. Kenosha,* 167 Wis. 371, 167 N. W. 451; *Northwestern B. & I. Co. v. Maryland Cas. Co.* 171 Wis. 526, 177 N. W. 31; *Baumann v. West Allis,* 187 Wis. 506, 204 N. W. 907; *Sinaiko v. Hustad,* 189 Wis. 298, 206 N. W. 976. However, in each of those cases with the exception of *Baumann v. West Allis,*

*supra,* there was either in the contract or in the bond a provision expressly promising to pay for all labor and material furnished to the principal contractor for the construction of the building. In *Baumann v. West Allis, supra,* the necessity for such a provision was recognized in this statement:

"If there be a provision in the contract obligating the contractor to pay for all material and labor entering into the construction of the building, the provision of the bond guaranteeing the faithful performance of the contract makes the surety liable to subcontractors who furnished such material and labor."

In that case it was held that by virtue of the statute, which requires the insertion of a provision to that effect in all contracts for the construction of public works, the law imputes such provision to such a contract, whether written therein or not; and that by reason of the obligation which is thus included in the contract, a surety who has guaranteed the performance of the contract by the principal contractor is liable for the payment of the latter's indebtedness to subcontractors. Those conclusions are, of course, applicable only in cases arising under contracts for the construction of public works.

It follows that the surety in the case at bar is not liable to the subcontractors or materialmen unless they are entitled to a lien or claim for which the Sisters of Mercy, as owner of the premises, might become liable. The Worden-Allen Company and Ward Brothers are the only parties who claim to be entitled to such a lien. Ward Brothers' claim is for services performed in hauling material and for moneys advanced for freight charges. They had no continuing contract, and were under no continuing obligation to render services. They claim that each charge is for a service performed independently of the charges which preceded or followed. The first work which they performed was done on

July 1, 1930. Until January 3, 1931, they gave no notice as is required of a subcontractor under sec. 289.02 (1), Stats., which (so far as now material) provides:

"Every person . . . other than a principal contractor, who performs . . . any work or labor or furnishes any material . . . shall within thirty days after performing the first work or labor or furnishing the first materials give notice in writing to the owner of the property upon which such work or labor is being performed or to which such materials are being furnished either by personal service on the owner or his agent or by letter addressed to such owner or his agent at the last known postoffice address of such owner or agent, . . . stating that he has been employed to perform work or labor or to furnish materials. . . ."

They do not claim a lien for work performed more than thirty days prior to January 3, 1931, but contend that they are entitled to a lien for work performed within that thirty-day period.

In relation to sec. 289.02 (1), Stats., this court said in *Dayton Hotel Co. v. Farley & Loetscher Mfg. Co.* 205 Wis. 112, 236 N. W. 595:

"The owner is . . . entitled to rely upon the plain wording of the law, which says that notice must be given to him within thirty days after the subcontractor furnished to him the first materials. The owner is not obliged to inquire whether the contractor has paid cash for the first or subsequent deliveries made by his subcontractor. If the statute be given the construction which appellant claims it should receive, words would be read into it giving it a substantially different meaning than it now has."

Although in that case all of the material was furnished under an entire contract, we consider the construction which was then given to the statute equally applicable to work performed or materials furnished in the absence of an entire or continuing contract. There are no words in the statute because of which it can be inferred that the requirement, that

notice is to be given within thirty days after performing the
first work, is limited to cases in which there is an entire con-
tract. As a matter of fact the owner is usually entirely un-
aware of the nature of the contractual relationship which
exists between the subcontractor and the principal contractor.
The occasion for entitling the owner to the notice, which the
statute requires to be given for his protection, exists to the
same extent whether the subcontractor is performing under
an entire or under successive contracts. On the other
hand if, because of the absence of an entire contract, each
delivery of materials or performance of work is to be con-
sidered an independent and therefore a "first" transaction,
then the subcontractor would be obliged to serve successive
notices every thirty days, during performance by him be-
yond that thirty-day period, in order to preserve his right to
claim a lien for each independent "first" item or work or
materials furnished after the expiration of thirty days from
time of the preceding notice. Manifestly, the statute was
not intended to impose any such burdensome requirement on
subcontractors. The construction announced in *Dayton
Hotel Co. v. Farley & Loetscher Mfg. Co., supra,* is appli-
cable whether the subcontractor is performing under an en-
tire contract or otherwise.

The only notice given by the Worden-Allen Company,
which it contends was in compliance with sec. 289.02 (1),
Stats., was addressed to "Law, Law & Potter, Archts., Madi-
son, Wis. Attention of Mr. Potter. Gentlemen:" The
owner was never advised of the receipt of that notice. The
statute requires the notice to be given to the owner by "per-
sonal service on the owner or his agent or by letter addressed
to such owner or his agent." Mr. Potter and Messrs. Law,
Law & Potter, to whom the notice was addressed and sent,
were not general agents of the owner, Sisters of Mercy.
The only evidence as to their authority is that they were

engaged as architects to prepare the plans, specifications, contract, and bond; to inspect the materials and the construction as the work progressed; and to issue certificates to the contractor in relation to the compensation to which he became entitled. There was no proof that the architects made or were authorized to make any payment for the owner, or to act for the owner in any manner in relation to claims for liens. Consequently, the architects were merely special agents of the owner without any authority or duty to make payments on the owner's behalf, or to determine in what manner debts for work or materials should be incurred or paid, or secured. The following statement in 5 Corp. Jur. p. 256, § 4, indicates the limited scope of an architect's authority, viz.:

"Where an architect is employed as an architect to prepare plans, or plans and specifications, for a building, and also to superintend the erection of the building, his relation to his employer extends no further than the performance of those services; his powers as agent being limited by his contract. He has authority to proceed in the usual way, and the employer may constitute him his agent generally for all purposes connected with the erection of the building; but apart from an agreement to that effect an architect is not the general agent of the owner, and has no authority to bind the owner by contracts for any work done upon or materials furnished for the structures concerning which he is employed."

To the same effect see 6 Cyc. 29, where *Dodge v. McDonnell,* 14 Wis. *553, is cited. In that case this court said:

"Did the defendant then hold Donnell out to the world as having authority to purchase materials for him? Certainly not by the mere fact of his employment as architect. An architect might have such authority delegated to him, but it does not belong to him as such. And no stranger would be warranted in inferring from the mere fact of such employment, that the architect had authority to contract for labor

and materials. If it were otherwise, a man who had employed an architect to make the plans and specifications of his house, and then engaged with a contractor to do the work and furnish the materials, which is the usual course, might find himself bound by another contract entered into by the architect with somebody to do the same work and furnish the same materials. Such a position cannot be sustained for a moment."

Because of that limited scope of an architect's authority as a mere special agent for the owner, the courts have held that—

"An architect with the usual powers and duties and not specifically authorized to receive notice is not the owner's agent for the purpose of receiving notice of intention to claim a mechanic's lien." 40 Corp. Jur. p. 165, § 185 (b), note 51 (d). *Drummond v. Rice,* 27 Pa. Super. Ct. 226; *Langenheim v. Anschutz-Bradberry Co.* 2 Pa. Super. Ct. 285; *Sharpe v. Budd,* 17 Quebec K. B. 17; *J. W. Duncan, Ltd. v. Desjardins,* 51 Quebec Super. Ct. 71.

Consequently, the owner was not chargeable with the notice which Worden-Allen Company addressed to the architects, and its claim for lien fails because of non-compliance with the thirty-day notice requirement in sec. 289.02 (1), Stats. It follows that the judgment must be reversed in all respects and that judgment should be entered dismissing the cross-complaints of Worden-Allen Company, Solie Lumber Company, Chamberlain Metal Weather Strip Company, Charles Ward and Arthur Ward, and Fred Lehman.

*By the Court.*—Judgment reversed, with directions to enter judgment as stated in the opinion.