HAMMOND, Respondent, vs. SANDWICH MANUFACTURING COMPANY, Appellant.

*May 4—June 1, 1911.*

*Sales: Warranty: Breach: Conditions precedent to action: Damages: Lost profits, when recoverable: Diligence.*

1. Where, upon a sale of a gasoline engine, there was a written warranty that the engine was "made of good material and first-class workmanship, and for one year from date of shipment [the seller] will make good all breakages" under certain conditions, the warranty as to material and workmanship was absolute and distinct from the provision as to breakages, and the buyer might sue for breach of the former without availing himself of the latter.

2. The measure of general damages for breach of the warranty as to material and workmanship was the difference between the market value of the engine as it was at the time of delivery and its market value had it fulfilled that warranty.

3. Special damages for loss of profits caused by breach of contract are recoverable only when it is clear that they were fairly within the contemplation of the parties at the time the con-

tract was made, and when their amount can be ascertained with reasonable certainty and their origin can be traced with like certainty to the breach of the contract; and the party seeking to recover such special damages must have exercised ordinary diligence to minimize them.

APPEAL from a judgment of the circuit court for Pierce county: E. W. HELMS, Circuit Judge. *Modified and affirmed.*

This is an action to recover general and special damages for the breach of a warranty in the sale of a gasoline engine. The jury by a special verdict found that there was a breach of the warranty and that plaintiff suffered general damages by reason of such breach in the sum of $437.50 and special damages to his business in the sum of $450. The trial court gave plaintiff the option of remitting from the special damages all in excess of the sum of $200, and taking judgment for the sum of $627.50, or, in lieu thereof, a new trial. Plaintiff elected to remit, and from a judgment entered upon the verdict as modified defendant appealed.

For the appellant there was a brief by *John E. Foley,* attorney, and *F. A. Lyon,* of counsel, and oral argument by *Mr. Lyon.*

For the respondent there was a brief by *White & Skogmo* and *W. C. Owen,* and oral argument by *Mr. Owen.*

VINJE, J.    The warranty of the engine reads as follows:

"Said Alamo gasoline engine to be warranted made of good material and first-class workmanship, and for one year from date of shipment the *Sandwich Manufacturing Company* will make good all breakages on said engine not caused by ordinary wear or accident, misuse or neglect, always providing that the *Sandwich Manufacturing Company* is not called upon to pay carriage on such broken parts as the purchaser may claim to be defective, and that fair and reasonable proof be submitted to the said *Sandwich Manufacturing Company* when such claim of defective parts be made. The purchaser agrees that all repairs or extras furnished under the above

warranty will be put in place by him without cost of labor or other expense to the *Sandwich Manufacturing Company.* However, if the said *Sandwich Manufacturing Company* is called upon to put in order, and at which time it is found that the fault was not in the machine but in the manner in which it was operated, then the purchaser agrees to pay expenses of man (including time at $3 per day) sent to operate it, and the machine will be considered as filling the warranty."

The defendant claims that before a suit can be maintained upon this warranty it is incumbent upon plaintiff to prove that he requested the defendant to make good, within the year, all breakage on said engine not caused by ordinary wear or accident, misuse, or neglect; that he offered to pay carriage thereon and to submit fair and reasonable proof when such claim of defective parts was made, and also to put in place without cost of labor or other expense to the defendant all repairs or extras furnished under the warranty; and that, inasmuch as he had refused to do so, he could not maintain the suit. The plaintiff, on the other hand, contends there was an absolute warranty as to good material and first-class workmanship, and that the provisions following such warranty were only provisions as to how he could, within the year, replace broken or defective parts, at the partial expense of the defendant, if he so elected, but that he was not obliged to resort to those provisions unless he saw fit, since they were inserted for his benefit and not for the benefit of the defendant. The latter construction seems the more reasonable one. The engine is warranted to be made of good material and first-class workmanship, and then follows the statement that for one year from date of shipment the defendant will do certain things toward making good breakage under certain specified conditions. The offer to do so can in no wise affect the previous warranty, nor is there any obligation on the part of the purchaser to avail himself it. The defendant's liability as to warranty of material and workmanship remains unaffected by the purchaser's availing himself, or failing to avail him-

self, of the offers as to repairs within the year. If the purchaser should avail himself of such offers and the defendant should refuse to comply with his agreements in respect thereto, then it might furnish an additional ground for breach of contract, but such fact would not affect the breach as to warranty of material and workmanship. The two are separate and distinct, and a breach of one does not affect the other. *Lindsay v. Fricke,* 130 Wis. 107, 109 N. W. 145.

Upon the question as to breach of the warranty of good material and first-class workmanship there was ample evidence to sustain the verdict. It is therefore, in the absence of prejudicial error relating thereto, conclusive upon the defendant.

The measure of general damages submitted to the jury was the difference in market value between the engine, with respect to material and workmanship, as it was at the time of delivery and as it should have been had it fulfilled the warranty. This was the correct rule in such a case. *Archer v. Milwaukee A. E. S. Co.* 144 Wis. 476, 120 N. W. 598.

Plaintiff's claim for special damages is founded upon loss of profits in business. It is a well settled principle of law that special damages can be recovered only when it is clear that they were fairly within the contemplation of the parties at the time the contract was made, and when their amount can be ascertained with reasonable certainty, and their origin, with like certainty, can be traced to the breach of the contract. *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Howard v. Stillwell & B. Mfg. Co.* 139 U. S. 199, 11 Sup. Ct. 500; *Stevens v. Yale,* 113 Mich. 680, 72 N. W. 5; *Griffin v. Colver,* 16 N. Y. 489. In the present case the only evidence to show that special damages were within the contemplation of the parties is the fact that plaintiff told the agent of the defendant that he expected to locate a feedmill, planer, and saws at Elmwood; that he had previously had such outfit at Spring Valley, about eight miles distant. As to the damage to his business when the mill was idle,

plaintiff testified that he had to turn away business every day. When asked how extensive such business was, he replied: "I cannot answer that exactly; quite a little." This seems to be as definite a statement of the actual amount of business lost as the case contains. True, plaintiff testified that when the mill ran at full capacity it earned from $35 to $40 per day and that his expenses for help and gasoline were about $8 per day. He also testified that the rental value of the mill was about $8 per day. But such testimony falls far short of showing with reasonable certainty the amount of profits actually lost. From all the evidence in the case we are satisfied that loss of profits in the prospective business was not within the contemplation of the parties at the time the sale was made, nor was the amount of such lost profits shown with sufficient clearness to entitle plaintiff to recover. Moreover, it is apparent the plaintiff did not exercise ordinary diligence to minimize the special damages. This he was required to do. *Northern S. Co. v. Wangard,* 123 Wis. 1, 100 N. W. 1066. It appears from the evidence that the mill was idle three weeks because the governor plate broke, and at another time three weeks on account of a defective cylinder ring, and that it was shut down from some time in July to some time in September without any apparent effort on the part of plaintiff to remedy the defects. Under such a state of facts it would be inequitable to allow him to recover for lost profits, even if they had been within the contemplation of the parties and could be ascertained with reasonable certainty.

This disposes of the main questions in the case. Defendant assigns twenty-seven errors. Many of them relate to the question of special damages and are eliminated by their disallowance. Others not specially treated must be deemed not well taken.

*By the Court.*—The judgment is modified by deducting therefrom as of the date of its entry the sum of $200 allowed for special damages, and as so modified is affirmed, with costs to defendant.