LLOYD INVESTMENT COMPANY, Respondent, vs. ILLINOIS SURETY COMPANY and another, imp., Appellants.

*October 25—November 14, 1916.*

*Principal and surety: Discharge of surety: Building contract: Construction: Advance payments: Negotiable notes: Breach of contractor's agreement to loan money: Damages: Final settlement: Questions for jury: Evidence: Harmless error.*

1. Where the performance of a contract is guaranteed by a surety, any material, substantial, and prejudicial variation of its terms will discharge the surety.

2. Advance payments not provided for in the contract, while they constitute a variation of its terms, will not discharge the surety if it affirmatively appears that under all the circumstances the departure from the agreement was immaterial and nonprejudicial.

3. A building contract which provided for payment of $5,000 on or before completion of the mason work, to be made by delivery of the owner's promissory note payable on or before a specified date, and for a payment of $5,000 when the first-floor stores were ready for occupancy, also to be made by delivery of a promissory note "made, executed and dated on or before the time when said first-floor stores are ready" and payable on or before a specified date, and in which the contractor further agreed to accept payment of said notes and of the final amount ($3,000) due on the contract in notes payable $500 every three months, is construed as permitting the owner to give the two $5,000 notes in negotiable form, and the giving of them in such form was therefore not such an advance payment as would discharge a surety; nor was the giving of the second note a short time before the first-floor stores were ready for occupancy a material or prejudicial departure from the contract.

4. The owner having given the two $5,000 notes in negotiable form, they were negotiated by the contractor, and when they became due the owner gave a new $10,000 note to take them up. *Held* that, the contractor having rendered himself incapable of taking new securities in payment of the $5,000 notes as he had agreed, the giving of the new note was not an election by the owner to pay those notes in cash rather than in new securities.

5. The agreement of the contractor to accept $13,000 in notes payable $500 every three months was in effect an agreement to loan

the owner $13,000; and for his breach of such agreement the contractor was liable for such damages as should have been reasonably in contemplation by both parties, when the agreement was made, as a probable result of a breach of it, including in this case commissions necessarily paid in procuring a loan from other sources and the difference between interest at the rate agreed upon and at the rate the owner was compelled to pay.

6. Whether, at the time the contractor gave a receipt "for payment of balance due under the contract and for extras," a complete settlement of all matters relating to the contract was made, thereby discharging the surety, was a question which, under the evidence, it was not clearly error to submit to the jury.

7. The rejection of evidence offered on behalf of the surety as to a conversation between the contractor and the president of the owner regarding extras, was not a prejudicial error, there being no recovery or basis for a recovery for extras, and it not being probable that the reception of such evidence would have changed the finding of the jury on the question of settlement.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge.    *Affirmed.*

Action to recover damages for alleged breaches of a building contract made between plaintiff and defendant Utley, September 2, 1913, whereby the latter agreed to furnish all the material and labor and construct for the former a building, according to certain plans and specifications, for the sum of $23,000, the performance of which was guaranteed by the defendant surety company.

The contract provided that the sum aforesaid should be paid, $2,500 in cash upon completion of the foundation, the same to be secured by plaintiff's promissory note indorsed by one Jacobson, and bearing even date with the contract, payable on or before thirty days; $2,500 in cash when the walls and first floor were completed, secured by an indorsed note as before, payable on or before sixty days from date; $5,000 in cash upon the building being under roof, the same to be secured by plaintiff's note payable to the order of Utley, guaranteed by said Jacobson and executed and delivered at the time of the completion of the first floor and walls to grade,

and payable on or before sixty days from date; $5,000 on or before the time of completion of the mason work, the payment to be made by delivery of plaintiff's promissory note indorsed or guaranteed by said Jacobson, payable on or before January 1, 1914, and to then be taken care of as hereinafter indicated; $5,000 upon the first-floor stores being ready for occupancy, payment to be made by note indorsed as before, said note to be made, executed, and dated on or before the time when the first-floor stores were ready for occupancy, and payable on or before January 1, 1914; and the balance, $3,000, upon completion of the building to the satisfaction of plaintiff, said $3,000 and the two $5,000 notes payable January 1, 1914, to be paid in cash or securities acceptable to Utley, at plaintiff's option, said Utley to accept the promissory note, or notes, of plaintiff for the $13,000, secured by a second mortgage on the building and premises, in case of the first mortgage not being over $29,000; said note or notes not to bear interest at over five per cent. per annum, payable annually, and providing for the principal of said note or notes to be paid, $500 every three months; and provided further that the plaintiff shall have legal title to the property, incumbered for not more than $29,000.

The contract further gave Utley the privilege to provide or furnish plaintiff the money to enable him to pay the amount due on the land contract he held on the premises and to provide for second-mortgage securities on the same, and plaintiff agreed, if acceptable to Utley, to undertake to procure a loan on the premises in excess of $29,000, so the latter would receive in cash, instead of mortgage securities, the amount thus raised on first mortgage in excess of the amount payable on the land contract, in such case Utley to have a mortgage on the premises for the balance that would then be due and owing.    The contract further provided that in case plaintiff, with or without the assistance of Utley, should be unable to procure a deed of the property, so as to make mortgages there-

on, Utley should accept as security for payment of the $13,000 in notes the land contract plaintiff held on such property, with an assignment thereon, on which contract plaintiff represented there was to be paid as principal not to exceed $29,000.

The last two $5,000 notes were given in negotiable form and were negotiated by Utley at the Merchants & Manufacturers Bank, in Milwaukee, Wisconsin. One was renewed at the bank January 3, 1914, for a short time. February 6,. 1914, plaintiff gave Utley a note of $10,000, payable to his order in three months with interest at the rate of five per cent. per annum. It was guaranteed by the aforesaid Jacobson and indorsed by Utley and one Bitker. It was used at the bank to take up the two $5,000 notes, Bitker depositing stock as collateral security. The note was not paid when due. The bank put it in judgment and plaintiff paid such judgment.

Before the building was completed, Utley became financially embarrassed and appointed E. J. Patterson to act for him, who did so act thereafter in the matters appertaining to the building contract.

During the pendency of the action, Utley was adjudged a bankrupt and *James S. Hopkins* was appointed receiver for the surety company and was duly made a defendant.

So far as the trial court regarded the evidence as in conflict, the issues were submitted to the jury for a special verdict. The result was, in effect, as follows: The requirement of the surety bond as to notice in writing to the surety company of defaults, also the requirement as to commencing suit for damages within six months after any breach of the contract, were waived. Defendant agreed to protect plaintiff from any loss that might result to it if the latter refused to pay the $10,000 note when due. There was no material alteration in the manner of erecting the building, to plaintiff's knowledge. There, was no final settlement between the parties. There was de-

lay of 63 days in the contract time for completing the stores on the lower floor ready for occupancy.    There was delay of 101 days in the contract time for completing the building.

In addition to the foregoing the jury found damages on plaintiff's claims which were submitted, aggregating $2,825 and the court found, on the undisputed evidence, as was supposed, other items of damages, making in all $9,472.94. Included in the court's findings were $2,000 for commissions paid in procuring the loan which, it was claimed, Utley failed to provide as per contract, and $2,087 for difference in interest between the rate agreed upon and the rate plaintiff was compelled to pay.

Judgment was rendered in plaintiff's favor in accordance with the aforesaid findings.

For the appellants there was a brief by *Flanders, Bottum, Fawsett & Bottum,* and oral argument by *F. L. McNamara* and *E. H. Bottum.*

For the respondent there was a brief by *Rubin, Fawcett & Dutcher,* attorneys, and *Paul R. Newcomb,* of counsel, and oral argument by *Mr. Newcomb.*

MARSHALL, J.    No complaint seems to be made but what the court submitted to the jury all material disputed matters of fact.    The questions raised are mainly questions of law, and are few in number.    All will be treated which seem to merit consideration.

The contract is ambiguous in several particulars, so the trial court, in reaching its conclusion, was obliged to construe the language thereof.

Did the contract permit the plaintiff to give the contractor the two promissory notes which were made payable January 1, 1914, in negotiable form?    That is the first matter submitted.    It is contended on the part of appellants that it did not and that, in so doing, there was a material prejudicial departure from the agreement, in that, thereby, respondent was rendered incapable of protecting itself, to the extent of

$10,000, from damages caused by the contractor's failures to perform as he agreed.

It is well settled that any material, substantial, and prejudicial variation of the terms of a contract, where performance by the contractor is insured by a 'surety, will discharge such surety, and that advance payments, not provided for in the contract, constitute such a variation, as, thereby, the contractor's interest in performing his agreement is lessened and the surety has a right to the benefit of such interest and is presumed to rely thereon. *Stephens v. Elver,* 101 Wis. 392, 77 N. W. 737; *Kunz v. Boll,* 140 Wis. 69, 121 N. W. 601. But even advance payments will not discharge the surety if it affirmatively appears that, under all the circumstances, the departure from the agreement was immaterial and nonprejudicial. The principle must be kept in mind that a surety is so discharged only when the departure is material and prejudicial, and not otherwise.

If the giving of the two $5,000 notes in negotiable form was a departure from the contract, so as to amount, in effect, to an advance payment, as claimed, a pretty conclusive case of prejudicial variance would be presented. But, as we construe the contract, it contemplated just such a circumstance. The agreement was to give promissory notes at the time they were given and payable at the time therein provided. The evident purpose was to aid the contractor in obtaining money to enable him to carry out his contract. The only way that could have been efficiently accomplished was by giving negotiable promissory notes, as was done. The provision was evidently inserted in the contract to enable him to have an equivalent of cash payments at the time of delivery of the notes. If it had been intended that nonnegotiable notes should be given, doubtless, an unmistakable stipulation on the subject would have been made.

We do not overlook the fact that the contractor agreed to accept payment of the two $5,000 notes when due and the final amount of $3,000 on the contract in notes due $500

each three months.    Doubtless, that required him to take up
the $5,000 notes when due so as to carry out his agreement,
but it did not operate to limit respondent to giving notes in
nonnegotiable form.

It is suggested that the $5,000 note which was agreed to be
given when the first-floor stores were ready for occupancy was
given before that time and that such circumstance constituted
a prejudicial departure from the contract.    Here again the
language of the agreement is involved in some obscurity.
While it was provided that $5,000 should be paid "when the
first-floor stores were ready for occupancy," it was also pro-
vided that "the said payment to be made by delivery to said
party of the first part of the promissory note of said party of
the second part, indorsed or guaranteed by said Julius Jacob-
son, said note to be made, executed, and dated on or before
the time when the first-floor stores are ready for occupancy."
It is considered that the parties probably meant thereby that
the payment should be made when the first-floor stores were
ready for occupancy but that the note might, at respondent's
option, be given on or before that time.    But if that be not
so, it is considered that the giving of the note a short time be-
fore the first-floor stores were ready for occupancy was not a
material prejudicial departure from the contract.

It is further suggested that the circumstance of respondent
taking up the notes and giving a new one was an election
under that clause of the contract permitting it to pay when
due in cash or by securities acceptable to the contractor.
That seems clearly wrong.    The contractor rendered himself
incapable of taking the new securities in lieu of cash for the
two $5,000 notes and, therefore, respondent had no oppor-
tunity to efficiently make an election.    It gave the new note
because it was compelled to do so, not because it preferred to
pay them in cash rather than in new securities which the
contractor agreed to take if respondent so desired.

It is further contended that error was committed in award-
ing damages to the extent of $4,087.50 on account of the

contractor failing to loan respondent $13,000 to provide for
the two $5,000 notes and the $3,000 last to be paid on the
contract. Counsel base this on the idea that the trial court
was wrong in the theory that Utley agreed to furnish re-
spondent $13,000 to take care of the two notes and such last
payment. On the contrary it seems to us that such theory is
clearly right. It was expressly stipulated that Utley, at re-
spondent's election, should take $13,000 in notes, $500 due
each three months after January 1, 1914, in payment of the
two $5,000 notes and the last instalment on the contract.
That is, in effect, Utley agreed to loan respondent $13,000
for the purposes of making such payment. He rendered
himself incapable of doing it by putting the two notes beyond
his control, thus compelling respondent, in the end, to pay
them in cash, and by permitting liens on the building aggre-
gating more than the $3,000 last payment which respondent
was compelled to provide for. Had Utley carried out his
agreement, respondent would have been enabled, through, in
effect, a loan by the former, to pay off this $13,000, $500
every three months, with interest at the rate of five per cent.
per annum. So the claim of appellants that the basis for
the court's finding on this point is without foundation cannot
be sustained.

The contract very clearly, as we view it, obligated Utley to
provide the $13,000 which respondent was compelled to
raise. That was one of the obligations covered by the surety
bond. Under the peculiar circumstances which the contract
shows were brought home when the contract was made, the
damages awarded for his failure to provide the $13,000 were
such as should have been reasonably in contemplation by both
parties when the agreement was made as a probable result of
the breach of it, and so fall within the rule for assessing dam-
ages for such breaches. *Guetzkow Brothers Co. v. A. H.
Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Bradley v. C.,
M. & St. P. R. Co.* 94 Wis. 44, 68 N. W. 410; *Hammond v.
Sandwich Mfg. Co.* 146 Wis. 485, 131 N. W. 1097. Those

circumstances were such that in order to obtain the $13,000 on the property, the amount due on the land contract had to be provided, making it necessary to raise, in all, some $44,000.

The next complaint made is that the court erred in not holding as a matter of law that plaintiff and Utley made a complete settlement of all matters involved in the case, thereby discharging the surety.

It appears that on October 5, 1914, the last payment under the contract had not been made. Then, Mr. Patterson, acting for Utley and others, and Mr. Jacobson, president of respondent, acting for it, had some negotiations in respect to the differences between the two principals and, in the main, in regard to providing money to pay off lien claims on the building amounting to some $3,500. As a result of such negotiation, Patterson loaned respondent $3,500, which was used to provide for such claims, taking its note therefor and receiving a paper reciting that such note was received "for balance due under the contract and for extras" in constructing the building in question. There was much evidence given by Jacobson and Patterson in respect to this subject and evidence in relation to how the bookkeeper, by Patterson's direction, entered the matter on the Utley books. On the whole, the evidence tends, pretty persuasively, to show that, at the time the receipt was given, a full settlement of all the differences between the parties was intended, but, in view of the decision of the trial court, we are unable to reach the conclusion that error was clearly committed in submitting the matter to the jury. There was considerable evidence, not very satisfactory it is true, which, in a reasonable view, tends to show that the giving of the receipt was not for the purpose of a full settlement between Utley and respondent. It is needless to recite such evidence here. It has been read and reread and weighed in all reasonable aspects with the result that we are not persuaded to overrule the trial court. The

receipt itself, in view of the evidence, is not very satisfactory. Instead of stating that it was in full for all claims under the contract, it states that it was for balance due and for extras. That might well refer to the final payment of $3,000 and claims for extras, and have no reference to claims for damages for breach of contract. This view is consistent with, and rather suggested by, the provision of the contract that no payment "except the final payment shall be conclusive evidence of the performance of the contract or any part thereof, and no payment shall be construed to be acceptance of any defective work or materials." That seems to mean that the final payment, unexplained, would be conclusive evidence that the building had been constructed according to the plans and specifications except as to material used and defective work, not, necessarily, that such payment would preclude the owner from his remedy for failure to construct the building within the time agreed upon and for failure as to other provisions of the contract not having to do with the physical character of the building. Doubtless, under such a contract, the last payment could be made under such circumstances as to save the owner's rights, as in this case, where the payment is made by way of providing money to discharge lien claims on the property. Here there was no recovery for extras, so there is nothing contrary to the receipt in respect to that matter. There was a recovery for defective work, but the contract expressly provided that no payment should preclude claims being made therefor. The other elements of damage have nothing to do with the character of the building. They relate to failure to complete it within the time agreed upon and failures of Utley to protect the building from liens and to keep his agreement to loan respondent the $13,000 to take care of the two $5,000 notes and provide for the last payment of $3,000 agreed to be made on the contract.

It is a reasonable view of the evidence that the receipt was not intended to cover these matters; that it referred to the

$3,000 which was to be paid last and any claim for extras and nothing else, and was accepted to raise money to pay off lien claims on the property.

A further and last complaint is made in respect to the rejection of some evidence offered by appellants as to a conversation between respondent's president, Jacobson, and Utley, regarding extras.    We are unable to see how that was prejudicial to appellants to the extent that the reception of the evidence might probably have changed the finding of the jury on the question of settlement.    There was no basis in the evidence for a recovery for extras.    There was no such recovery.    The evidence had no bearing, and is not claimed to have had, except to show that there were matters of difference between the parties at the time of the negotiations leading up to the giving of the receipt.    There is no doubt but what there were such matters.    The rejected evidence had reference to extras only and the receipt covered that. Whether it was intended to cover all other matters of difference then existing, or that might arise under the contract, is another question and one upon which, as before indicated, we are unable to reach the conclusion that the trial court clearly erred in submitting the matter to the jury.

*By the Court.*—The judgment is affirmed.