**STARK v. GEORGE.**    **(No. 408-3763.)**

(Commission of Appeals of Texas, Section B. June 20, 1923.)

**1. Sales ⚖⇒288(2)—Failure to make complaint of machinery within specified time held waiver of damages.**

Where a contract of sale and warranty provides that after three days' test, if no objection is made to the home office, the machine is to be considered as accepted, and that after that time the purchaser agrees he will have no right to rescind the trade and return the machine or make any other claims by reason of its failure to do the work, the purchaser waives his right to any damages because of the failure of the machine to do its work by failure to complain within the specified time.

**2. Sales ⚖⇒288(4)—Failure to complain of machinery within three days held not waiver of claim for replacement of defective parts.**

Failure to complain of the condition of machinery within three days *held* not a waiver of the purchaser's claim for replacement of defective parts, which were warranted for one year.

**3. Sales ⚖⇒267—Implied warranty of machinery should not be released except by contract, either expressly or by necessary implication.**

The seller of machinery should not be released from the implied warranty as to the soundness of the parts of machinery, so far as material and workmanship are concerned, unless the sales contract itself so released him, either expressly or by necessary implication.

**4. Sales ⚖⇒429—Return of defective machinery parts to factory of seller held not condition precedent to right of purchaser to claim offsets in suits on notes therefor.**

Where machinery sales contract warranted the material and workmanship for one year and covenanted to replace defective parts, provided that it be delivered to the factory of the company, transportation prepaid, with satisfactory evidence that its failure was due to defective material and workmanship, *held* that it was not obligatory on the part of the purchaser to return such defective parts in order to claim offsets in a suit on notes for the cost thereof; it not being clear that the return of the parts to the factory of the seller was the purchaser's exclusive remedy.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by R. B. George against L. D. Stark. The Court of Civil Appeals reformed and affirmed a judgment for plaintiff (237 S. W. 948), and defendant brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

H. H. Cooper and Sam R. Merrill, both of Houston, for plaintiff in error.

Hunt & Teagle, of Houston, for defendant in error.

POWELL, J. On July 16, 1917, L. D. Stark purchased from the Twin City Company, a corporation with headquarters at Minneapolis, one 25x50 horse power oil tractor, with accompanying machinery and plows. In making the purchase he executed a written "order for machinery," part of which was the warranty which will be hereafter set out in full. It is not necessary to set out the other portions of the order, except to say that it was one of the company's own forms and protected its rights in every possible way.

The order was filled. The machinery was delivered to Stark the latter part of that

month. On July 25, 1917, Stark paid a portion of the purchase price in cash. He closed the balance due by two notes; each bearing said date and each being for the principal sum of $1,345. One note matured August 1, 1918, and the other a year later. They drew interest at the rate of 8 per cent. per annum from date until maturity, and 10 per cent. thereafter. They provided for the usual 10 per cent. attorney's fees in case of default. A few days later, on July 31, 1917, Stark executed a chattel mortgage, in usual form, on all the machinery, to secure the aforesaid notes.

The notes were in due course indorsed over by the payee company to R. B. George, without recourse. George was the state agent in Texas for the company. The first note was not paid at maturity. Under the terms thereof the holder declared both notes due. Suit was then filed against Stark to recover the full amount due on the notes, principal, interest, and attorney's fees, and for a foreclosure of his mortgage lien on the machinery.

The nature of the pleadings of the parties and the result of the trial have been set out at great length by the Court of Civil Appeals. We shall not repeat these matters in any detail here, but will refer only to those portions of the pleadings and proceedings generally which bear upon the questions we shall discuss and which we think decisive of the case.

Briefly, Stark asked for various offsets on the notes, due to an alleged breach of the warranty we shall hereafter copy in full. The plaintiff in the trial court pleaded full compliance with the warranty by the company and an entire failure on the part of Stark to comply therewith.

A trial was had before a jury. The case was submitted upon certain special issues, to which no objections were urged. Nor were any other issues requested by either party. No objection was offered to any testimony introduced. No evidence tendered was excluded.

The jury was not, of course, asked to construe the written contract in any way. The answers of the jury to the special issues are given in full by the Court of Civil Appeals. Upon these findings, so far as applicable to the law governing the written contracts, the trial court awarded plaintiff George a judgment for the full amount sued for, less an offset of $320 for defective parts of the machinery. This offset was allowed as of the date of the notes. The judgment entered was about $2,000 in excess of the amount contended to be due by counsel for Stark. The latter contended that the machinery was worth that much less to Stark by reason of failure to do its work.

Stark appealed to the Court of Civil Appeals, asking for reduction of the judgment.

Attorneys for George filed a cross-assignment, alleging error on the part of the trial court in allowing the offset of $320. The cross-assignment was sustained by the Court of Civil Appeals, and the judgment of the trial court was so reformed by it as to award George a judgment for the full amount due upon the notes. As so reformed, the judgment of the trial court was affirmed. See 237 S. W. 948.

Upon proper application therefor by counsel for Stark, the Supreme Court granted a writ of error. The controlling questions in the case depend upon the proper construction of the warranty clauses contained in the "order for machinery." It will be helpful, therefore, to copy such clauses in full and in their exact order, which we now do as follows:

## "Warranty.

"The seller warrants the machinery for one year to be well made of good material and durable if used with proper care. If within one year from date of shipment of the said machinery any part shall fail by reason of defective material or workmanship, the Twin City Company will furnish a new part free of charge f. o. b. factory, provided the broken part is delivered to the factory of the said company, transportation prepaid, with satisfactory evidence that its failure was due to defective material and workmanship.

"The tractor is further warranted to develop its full rated horse power when properly operated, under favorable conditions.

"If upon three days' trial after the said machine is first started, with proper care and under favorable conditions, it fails to work, the purchaser shall immediately give notice by registered mail or wire to the seller at its office in Minneapolis, Minn., and to the agent through whom it was purchased, stating wherein the machine fails, and shall allow a reasonable time for a competent man to be sent to put it in good order, and the purchaser shall render necessary and friendly assistance to operate it. If the machine cannot then be made to work under ordinary conditions, the purchaser shall immediately return it to said agent in as good order as when received (except for ordinary wear). The company will either furnish another machine with the same above warranty or (at its option) all cash and notes paid on the purchase price shall be forthwith refunded to the purchaser, which shall constitute a settlement in full of the transaction, and operate as a release of all claims of both buyer and seller, arising out of this contract. Failure to give notice within the three days specified shall operate as an acceptance of said machine and a complete fulfillment of this warranty.

"The spark plugs, magneto, and belting are of standard make and the buyer is protected by the manufacturer's warranty only.

"The above warranty does not apply to secondhand machinery, all of which is sold without warranty of any kind.

"This instrument comprises the entire contract between the parties hereto, and any verbal representations and agreements outside of, or contradictory to, the foregoing terms and

warranty are hereby agreed to be void for all purposes whatsoever."

The contract in suit was voluntarily entered into by Stark. No accident, fraud, or mistake is either alleged or proved. Therefore the parties are bound by the contract as written. Counsel for all parties concede that a contract in line with the decision of the Court of Civil Appeals would be entirely lawful. But it is urged on behalf of the purchaser that this contract has been improperly construed by the latter court. We come now to consider the terms of the warranty, for, after all, there can be but little controversy over the law involved in this case. Furthermore, the material facts are largely without dispute.

With reference to the third paragraph in the warranty, the Court of Civil Appeals announces the law correctly, in our judgment, as follows:

"Where the contract of sale and warranty provides for the making of a test of machinery, and that the retention of the machinery after such test shall be deemed the complete fulfillment of the warranty, the buyer, after making such test and using the machine for a long period of time, waives both his right to rescind and his right to damages for an alleged breach of warranty. 2 Mechem on Sales, §§ 1383, 1384, 1396; Bonham Cotton Co. v. McKellar, 86 Tex. 694, 26 S. W. 1056; Aultman v. McKinney (Tex. Civ. App.) 26 S. W. 267; Hutches v. Case Co. (Tex. Civ. App.) 35 S. W. 61; Thomas Mfg. Co. v. Griffin, 16 Tex. Civ. App. 188, 40 S. W. 755; Shearer v. Gaar-Scott Co., 41 Tex. Civ. App. 39, 90 S. W. 684; Case Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835; Haynes v. Plano Mfg. Co., 36 Tex. Civ. App. 567, 82 S. W. 532; Aultman Co. v. York, 1 Tex. Civ. App. 484, 20 S. W. 851; Cameron Steam Pump Co. v. Lubbock (Tex. Civ. App.) 167 S. W. 256; Oltmanns Bros. v. Poland (Tex. Civ. App.) 142 S. W. 654; Mfg. Co. v. Stevens (Tex. Civ. App.) 60 S. W. 350; Fetzer v. Haralson (Tex. Civ. App.) 147 S. W. 290; Wilson v. Avery (Tex. Civ. App.) 182 S. W. 884; Board v. Emerson-Brantingham Imp. Co. (Tex. Civ. App.) 203 S. W. 421; Adams v. Crittenden (Tex. Civ. App.) 191 S. W. 833."

[1] We think the third paragraph is a general warranty that the machinery will do its work. There is no more reason for saying that the third paragraph refers to one of the preceding paragraphs than to the other. We think the third paragraph should be construed within itself where its meaning is clear. The paragraph expressly states that, if the machine fails in any respect to do its "work," certain things shall be done. The paragraph allows three days for making the test in this connection; if no objection is made, the machine is to be considered as accepted; after that time the purchaser agrees he will have no right to rescind the trade and return the machine or make any other claims by reason of its failure to do its work.

Under this very paragraph Stark has no right to ask a recovery, because the machine as a whole was worth less to him than it would have been had it done its work better. In other words, having made no complaint to the home office within the three days, or within a year for that matter, he waived his right to any damages because of the failure of the machine to do its work. Having expressly so contracted, the contract should be enforced.

The facts show that no complaint of any kind was made to any one for several weeks after Stark began using the machine. No complaint was ever made to the home office of the company at Minneapolis until October 7, 1918, after default in payment of the first note had resulted in demand for payment by the company.

The facts show that this machine was used almost a year. Stark broke up some 600 acres of land with it in the fall of 1917 and 300 in the spring of 1918. The evidence discloses, without dispute, that the purchaser permitted the tractor to stand out in the dew, rain, and snow on the plains of Swisher county during all that time. It was not kept under a shed at any time. Furthermore, the undisputed evidence shows careless operation by Stark and his sons at times. No questions as to the lack of care on the part of Stark in looking after the machine were submitted to the jury.

[2] Under the terms of the third paragraph of this warranty and the undisputed facts in evidence, Stark has no claim for offset against the notes in suit, unless he is entitled to recover for the cost of curing certain defects in the various parts of the machinery. This brings us to a consideration of the first paragraph of the warranty, which contains a general warranty as to the good material and workmanship in the parts of the machinery.

As we construe the warranty, as a whole, the company agreed to warrant the machine, as a whole, as to its working capacity, for three days. Manufacturers of machinery realize that the capacity of a machine to do its work and to continue to do it depends largely upon the skill and care employed in its operation. For that reason it was unwilling to guarantee the machine as to its work for more than three days. But we think the company did contract to warrant for one year that the parts of the machinery were made of good material and workmanship. A reading of the first paragraph of the warranty shows this beyond dispute.

We do not think it can be contended seriously that the failure of Stark to make complaint within three days waived his claim for replacement of the defective parts. In other words, we are of the view that paragraph 3 does not limit the warranty set out in paragraph 1 as to defective parts. Con-

tracts must be so construed, where possible, as to give effect to all portions thereof. To hold that failure to make complaint within three days waives the general warranty in paragraph 1 is but to nullify the latter warranty. It would be impossible to warrant parts of a machine as to workmanship and material for one year, and contend that such warranty will be waived unless asserted in three days. We think this is too clear to require further discussion.

The jury found that the machine was defective in parts, and that Stark spent $200 in replacing certain of these defective parts. The undisputed evidence shows that the crank shaft, which was not replaced by purchase of a new one, was defective, and that a new one would cost $120; that the defect in the crank shaft arose within one year. The district court allowed an offset of $320 for the defective parts, whether replaced by Stark or not. The Court of Civil Appeals allowed no offsets. Should the credit of $320 have been allowed? A reading of paragraph 1 as a whole leaves no doubt but that it constituted only a general warranty of the individual parts of the machine. Under that warranty for one year it was liable to Stark for the cost of replacing these defective parts, or for their cost if not replaced, unless the failure of Stark to return the defective parts to the factory at Minneapolis constituted a waiver of his rights under paragraph one.

The proof shows that no parts were returned to the factory. The machinery was bought through one Durham, a local agent of the company at Kress, Tex., about 16 miles from the farm and home of Stark. Durham was also a garage man, and Stark was his customer in that respect also. The engine gave some trouble from time to time and Durham was called in by Stark. New parts were supplied through Durham. He admitted he had several of the defective parts in his garage, intending to ship them to the factory. But before such shipment the garage was burned and the defective parts were thus destroyed. In view of certain provisions of the contract, we doubt if the action of Stark in leaving these parts with Durham was compliance with the requirement that they be returned to the factory. So we must consider whether or not the provision that these parts might be so returned to the factory before relief be granted was exclusive. Was that provision a limitation upon the effectiveness of the general warranty contained in the first sentence of this paragraph No. 1? After very mature consideration, we have concluded that it is not exclusive but merely cumulative in its nature.

[3] In the first place, in the absence of a contract to the contrary, the law itself implies a warranty as to the soundness of the parts of machinery so far as material and workmanship are concerned. See Seitz v. Machine Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837; White, Ward & Erwin v. Hager (Tex. Com. App.) 248 S. W. 319. In view of that rule, we think a seller should not be released from such warranty unless the contract itself so releases him, either expressly or by necessary implication. The reason for this rule is manifest and its justice is self-evident. In a footnote to the case of Wasatch Orchard Co. v. Morgan Canning Co., 12 L. R. A. (N. S.) 540, it is said:

"If, in a contract for the sale of a chattel, a mere power, not obligatory, is conferred upon the buyer for the return of the chattel if not satisfactory, or if not as warranted, it is a general rule that the buyer, in such case, is not limited to that remedy alone, but he has an optional remedy, and, if he so chooses, he may retain the article and recover damages for breach of the warranty."

[4] A reading of paragraph 1 leads necessarily to the conclusion that the warranty therein contained was only to make good any parts of the machinery which might become defective within one year, either in material or workmanship. But we do not think the paragraph provides that the return of the defective parts to the factory is a condition precedent to the liability of the company to make these parts good. That that was one remedy or power Stark had is clear. But there is no statement in the paragraph that the warranty requires such return before it becomes effective. The paragraph does not make it obligatory upon Stark to return these parts in order to claim offsets in a suit upon the notes for the cost of these defective parts. It not being clear from the paragraph that the return of the parts was an exclusive remedy, we think the trial court correctly allowed the offsets aggregating $320. This seems to be a new question in the courts of Texas, but is supported by the following authorities: Obenchain v. Roff, 29 Okl. 211, 116 Pac. 782; Battey v. Lunt, Mass & Co., 30 R. I. 1, 73 Atl. 353, 136 Am. St. Rep. 926; Hammond v. Sandwich Mfg. Co., 146 Wis. 485, 131 N. W. 1097; Fisk v. Tank, 12 Wis. 276, 8 Am. Dec. 737; Wasatch Orchard Co. v. Morgan Canning Co., 32 Utah, 229, 89 Pac. 1009, 12 L. R. A. (N. S.) 540; Montgomery v. Hanson, 122 Iowa, 222, 97 N. W. 1081.

In the case of Obenchain v. Town of Roff, 29 Okl. 211, 116 Pac. 782, chemical fire engines had been sold. The contract of sale contained but one warranty, as follows:

"All material and workmanship is warranted to be of the best, and we agree to replace at our expense any defect in material or workmanship that may develop within two years."

In passing upon that warranty the Supreme Court of Oklahoma said:

"The only warranty contained in the contract of purchase is the one heretofore set out.

Counsel for plaintiffs in error contend that there can be no breach of this warranty until notice of the alleged defects in material or workmanship is served upon the vendor and an opportunity given to replace the same. To support this contention, they cite a great number of cases, none of which we think are exactly in point. Counsel's authorities are to the effect that it is competent for the parties to provide by contract that a particular course shall be pursued on the failure of the warranty. This doctrine is well settled, but we do not understand the contract involved herein to provide that the vendee shall give the vendor notice of defects in material or workmanship, and an opportunity to replace the same. As we construe the contract, the latter part of the warranty is merely cumulative. Notice is not made a condition precedent, and, following the rule that such a provision should be construed most strongly against the seller, it cannot be said that notice of, and an opportunity to replace, defects were necessary to entitle the vendee to recoup for breach of warranty when sued for the purchase price, when the parties did not provide therefor in their contract."

The Oklahoma case contained a very brief warranty provision. The case at bar is different, in that it contained a lengthy warranty, including several paragraphs. As we have already said, the courts are required to give effect to all provisions of the warranty, where possible. We have given such a construction to the warranties in suit. We think, under paragraph 1, Stark had an option of returning defective parts to the factory and having them replaced in that way, or claiming their cost value on the market as offsets when sued upon his notes. Where a manufacturer intends limiting a warranty to one remedy, he should render that intention so clear that a purchaser of ordinary ability could not, in the exercise of ordinary care, fail to discover it.

The other authorities we have cited are strongly in point. The case of Orchard Company v. Canning Co., supra, is particularly interesting and thoroughly annotated. In that case the Supreme Court of Utah says there must be an "obligation, either expressed or necessarily implied, upon the purchaser, to return the chattel," before its return shall become a condition precedent to the effectiveness of a warranty. In the case at bar there is no such obligation. If the company desires so to provide, the warranty can easily be amended accordingly for future use. Then no buyer could possibly be misled.

As stated, we think the district court, under the warranties, the findings of the jury on special issues, and the undisputed evidence, properly allowed the credit of $320. The allowance for these defective parts was in accordance with the verdict of the jury upon the special issues. Furthermore, it will be assumed that the court found other issues so as to support his judgment. The undisputed evidence justifies him in awarding judgment as he did, after the jury found, upon somewhat conflicting testimony, that Stark had expended $200 in replacing certain defective parts.

We think what we have already said disposes of the case, and shows that we are of the opinion that the trial court gave Stark all the offsets he had any right to demand. He was allowed a full return of the $200 he had expended in replacing certain defective parts. He was also allowed $120 for the defective crank shaft still in his possession. The judgment of the trial court in so limiting the offsets should be affirmed if the evidence in the case would sustain that court in making findings of fact on unsubmitted issues which would sustain his judgment. The evidence does this, and the judgment is not in conflict with any jury finding. In this connection the company and its agents occupy a most favorable position. Stark himself testified:

"Mr. Durham did take an interest in that machine and help me for a while that fall and spring. I could not name one piece of machinery or one part of that engine that I asked Mr. Durham to furnish that he did not furnish, that is, I had to furnish them of course, he would send and get them; of course he was not there all the time. I cannot name one part that I demanded of Mr. Durham, or of Mr. R. B. George, or of the Twin City Company during that first year that they did not furnish to me."

It seems that Durham did not report these complaints to his principal. There is no dispute upon this point. The company itself did not know that any claim was being made that any of the parts of the machine were defective in workmanship or material. Durham, on behalf of Stark, bought new parts from the company, permitting Stark to pay for some of them. He never refused a request Stark made.

Again, Stark's own expert witness, Boren, testified that in his judgment the warped crank shaft was the cause of all the trouble. The evidence shows that this crank shaft could have been replaced for $120. Why Stark did not do what he could to mitigate this loss and protect his machine from damages does not appear. An expenditure of $120, under the evidence, would have made a perfect machine of the one in suit. Instead of expending this small sum and saving himself and his engine, he seems to have tired of the machine and continued to expose it to the weather, relying upon defeating the payment of his notes, upon which more than $3,000 was due. Consequently, under the equities of the situation, even if we were confronted with an unrestricted general warranty, we doubt if Stark showed himself entitled to a credit in excess of said sum of $320. We believe the trial court was liberal in making an allowance of this size.

It follows, from what we have said, that

·we think the district court worked ·out the proper solution of this case and that the Court of Civil Appeals should not have re-formed such judgment before affirming it.

Therefore we recommend that the judg-ment of the Court of Civil Appeals be re-'versed, and that of the district court af-firmed.

CURETON, C. J. The judgment recom-mended in the report of the Commission of Appeals is adopted and will be entered· as the judgment of the Supreme Court.