CITIZENS NATIONAL BANK OF APPLETON, Respondent, vs.
REPUBLIC CASUALTY COMPANY, Appellant.

*April 6—May 3, 1927.*

*Principal and surety: Independent contractor using machinery left
by defaulting contractor: Liability of surety for rental: As-
signment of guaranty.*

1. Where a crane leased by a contractor doing certain work for a
   city sewerage commission was left on the premises after
   abandonment of the work by the contractor and was used by
   a construction company in completing the work under an in-
   dependent contract with the surety indemnifying the city un-
   der an agreement made expressly subject to ch. 332 of the
   Laws of 1878, the surety was not liable for the use thereof,
   since the act of the independent contractor in taking posses-
   sion of the crane could not create a liability against the surety
   therefor.  pp. 61, 62.
2. A contract in the nature of a special guaranty of credit is not
   assignable as to future defaults, and if there is no existing de-
   fault there is no cause of action capable of assignment.  p. 63.

APPEAL from a judgment of the circuit court for Outa-
gamie county: EDGAR V. WERNER, Circuit Judge. *Re-
versed.*

In April, 1923, one Whitney entered into a contract
with the Metropolitan Sewerage Commission to do certain
work.  The performance of this contract was guaranteed by
the defendant company. On May 5, 1923, payments there-
after to become due upon the contract between Whitney and
the Sewerage Commission were assigned to Chris. Schroe-
der & Son Company, a corporation, which undertook to
finance the transaction on behalf of Whitney.  On Octo-
ber 31, 1924, Whitney hired from Balliet a crane with one-
half yard clam-shell bucket.  This contract contained the
following recital:

"For and in consideration of the sum of one thousand
and no-100 dollars ($1,000) in hand paid by the party of
the second part [Whitney] to the party of the first part

[Balliet], which is evidenced by one note in the amount of one thousand and no-100 dollars ($1,000)."

Balliet had leased the crane to Whitney for two months for $1,000. Whitney agreed at the expiration of the agreement to return the crane in the same condition as received except for ordinary wear and tear. It was further agreed that if Whitney was not entirely through with the crane on December 31, 1924, it might be used for the estimated period of time that the crane was further required at the rate of $17 per day. When Whitney was through with the crane it was to be returned to Balliet at the yard of the Hunter Machinery Company, Milwaukee, Wisconsin. In the event that it was not used for the entire estimated period a rebate of $17 per day was to be made to Whitney.

Balliet transferred the note for $1,000 to plaintiff on October 31, 1924, by an indorsement in the form of a guaranty. The note was not indorsed by the surety company. On October 31, 1924, the surety company addressed the following letter to Balliet:

*"The Republic Casualty Company,* surety on the bond of W. W. Whitney, covering his contract No. 105 with the Sewerage Commission for work at Jones Island, Milwaukee, Wis., hereby guarantees the payment of rent on crane as per agreement entered into October 31, 1924, between John M. Balliet and W. W. Whitney and the return of said crane in satisfactory condition, as provided for in said agreement.                REPUBLIC CASUALTY CO.,
                "By M. Egerman, Attorney in fact."

On December 4, 1924, Balliet was adjudged a bankrupt and a trustee in bankruptcy was duly appointed. On December 12, 1924, Whitney quit work on his contract. Balliet had notice of this fact about January 1, 1925, and called it to the attention of both the surety company and his trustee in bankruptcy. No work was done on the job until the 14th of March. On February 13, 1925, the Metropolitan Sewerage Commission declared Whitney in default. On Feb-

ruary 6, 1925, the surety company elected to complete the work as surety, and on March 6, 1925, a contract was entered into for the completion of the work by the defendant surety company, which was concurred in by Chris. Schroeder & Son, the assignees of the moneys under the Whitney contract. When it declared Whitney in default on his contract the Sewerage Commission took possession of all the machinery on the ground under its contract. By arrangement with the defendant surety company the work was completed by the Siesel Construction Company under independent contract. The Siesel Construction Company completed the work, using the machines and tools which it found on the job, among others the crane which Whitney had rented from Balliet. The crane was used until the 6th of June, 1925, when it was returned. The case was submitted to the jury and the jury found: (1st) that the reasonable rental value of the crane from October 21, 1924, to December 12, 1924, was $884; (2d) that the reasonable rental value of the crane from March 14, 1925, to June 16, 1925, was $1,598; (3d) that the crane in question was damaged beyond the usual wear and tear; (4th) that there was no damage by reason of negligent operation prior to December 12, 1924; (5th) that the damage caused by negligent operation between March 14, 1925, and June 16, 1925, was $700.

There were the usual motions after verdict. The court found that—

"The *Republic Casualty Company*, for a valuable consideration, was and is an original promisor obligated to completely perform all the terms of the contract entered into by and between W. W. Whitney and the Metropolitan Sewerage Commission.

"That the contract between the said W. W. Whitney and Balliet and the said *Republic Casualty Company* was and is incident to the contract made by and between the said Metropolitan Sewerage Commission, W. W. Whitney, and the defendant *Republic Casualty Company*, and was made and entered into for the benefit of the *Republic Casualty Company*

in carrying out the terms and conditions of said contract
with the Metropolitan Sewerage Commission, and as a part
of it, for a valuable consideration, mutual promises ex-
pressed on the face thereof and made definite and certain by
reference thereto.

"The plaintiff at the time of the commencement of the
action was the owner of the crane in question and the causes
of action arising out of the contract relations existing be-
tween John M. Balliet, W. W. Whitney, Metropolitan Sew-
erage Commission, and *Republic Casualty Company*.

"That the defendant *Republic Casualty Company* is in-
debted to the plaintiff in the sum of $3,182 with interest
thereon from the 20th day of January, 1926."

Judgment was entered accordingly in favor of the plaint-
iff and against the defendant for $3,349.58, from which
judgment the defendant appeals.

For the appellant there were briefs by *Fish, Marshutz &
Hoffman,* attorneys, and *I. A. Fish,* of counsel, all of Mil-
waukee, and oral argument by *Mr. Fish.*

For the respondent the cause was submitted on the brief
of *Bradford & Bradford* of Appleton.

ROSENBERRY, J.    The trial court was evidently of the
opinion that the defendant company was an original prom-
isor; that after it entered into the contract of guaranty,
whatever Whitney did with reference to the carrying out
of his contract with the Metropolitan Sewerage Commission
he did for the benefit of the defendant company as well as
himself, and for that reason the contract which Whitney
entered into with Balliet "was made and entered into for
the benefit of the *Republic Casualty Company,*" and that the
defendant was therefore liable thereon.   This conclusion ig-
nores the real relationship of the parties and makes a guar-
antor a principal.   The fact that the contract between Whit-
ney and the Metropolitan Sewerage Commission and the
contract of the defendant company as surety were embraced
in one document does not change the legal relationship of

the parties. By the terms of the contract Whitney agreed to perform the work; the contractor and the defendant agreed to "indemnify and save harmless the city from all claims for labor performed or materials, tools, and plant furnished and to furnish the chief engineer with satisfactory evidence, when called for, that all persons who have done work or furnished tools, plant, or materials have been fully paid and satisfied."

It was further provided that in the event that the contractor Whitney should default, then the Sewerage Commission might complete the contract. A further clause of the contract provided:

"In consideration of the letting of this contract to said contractor, the sureties for itself, its successors or assigns, or for themselves, their heirs, executors, and administrators, as the case may be, hereby guarantee, covenant, and agree to and with the city that the said contractor shall and will well and truly execute and perform this agreement under the supervision and to the satisfaction of the Sewerage Commission, and that the said sureties will well and truly pay on demand to said city any and all damages and sums of money which the said contractor shall be liable to pay to the said city under this contract, or any clause or agreement therein; it being understood by all parties hereto that the liability of said sureties is the aggregate amount of this agreement."

There are other specific clauses affecting the liability of the surety in relation to certain specified matters.

Upon what basis it can be said that the defendant company was a principal under the terms of this contract it is difficult to see. Language could scarcely make clearer the fact that Whitney was a principal contractor and liable to the city as such; that the defendant company was the surety of Whitney, the principal, and that its liabilities are those of a surety and not of a principal. The trial court said: "The bond of the *Republic Casualty Company* is sufficiently broad to cover the whole situation," citing *Yawkey-Crowley L. Co. v. Sinaiko,* 189 Wis. 298, 206 N. W. 976.

Citizens Nat. Bank v. Republic Cas. Co. 193 Wis. 56.

In the *Sinaiko Case* the principal contractor agreed "to erect a three-story flat building," the contract to include the entire completion of the building. The owner agreed: "For and in consideration of the contractor completely and faithfully executing the aforesaid work and furnishing all the labor and materials therefor so as to fully carry out the agreement," he would pay the agreed contract price. The bond provided that the principal contractor "shall well and truly perform his part of the building contract above referred to according to its true meaning and intent, and pay all of the amounts due for labor and materials required of him under said building contract of said October 1, 1921, a true copy of said building contract being hereto attached," etc.

In this case the surety agreed to indemnify and save harmless the city and agreed with the city that the contractor should well and truly perform its contract and pay to the city any and all damages and sums of money which the contractor shall be liable to pay to the city. We are cited to no language in the contract and we find none which in the remotest degree resembles the language employed in the *Sinaiko Case, supra.* It is quite evident that the contract in this case was drawn for the purpose of excluding therefrom any condition or covenant which might be construed as an obligation on the part of the surety to pay third persons. This agreement is by consent of all parties hereto made expressly subject to all the provisions of ch. 332 of the laws of the state of Wisconsin of 1878, entitled "An act to protect laborers and materialmen in the city of Milwaukee, approved March 21, 1878, and all subsequent amendments thereto."

No contention is made or can be made in this case that the amount due from Whitney to Balliet for the rental of the machine is a lien under the law referred to. If the defendant is liable to the plaintiff in this action it must be

upon other grounds than those assigned by the trial court. The trial court was of the opinion that the defendant was not liable by reason of the guaranty given by the defendant to Balliet under date of October 31st, and in this view we must concur.  The contract between Whitney and Balliet was assigned to the plaintiff on November 21, 1924.  At that time, according to the verdict of the jury, Balliet had no cause of action against the defendant company. The rent by the terms of the contract was paid to December 31, 1924, by the execution and delivery of the note for $1,000, which had been prior to the time of the assignment indorsed to the bank.  Although Balliet had become bankrupt, the trustee in bankruptcy disclaimed any interest in the crane or any cause of action relating thereto.  While Balliet was bankrupt and incapable of further performance the contract required him to make an estimate of the time which the crane should remain upon the job; the plaintiff, however, never undertook to perform in his behalf or for him.  In fact the contract was thereafter entirely ignored.  If the plaintiff has a cause of action by reason of the use of the crane and the damage done to it by the Siesel Construction Company, it is not by reason of the terms of the contract dated October 1, 1924.  The crane did not belong to Whitney after December 31st under the lease.  It was taken possession of February 9th following.  If the plaintiff left its property upon the premises and permitted it to be used by third parties, it is difficult to see how the defendant company becomes liable therefor.  Defendant had elected to complete the contract of Whitney; it arranged with an independent contractor to do the work.  It appears without dispute that the independent contractor took possession of the equipment in question, but the act of the independent contractor could not create liability against the defendant, so that as to the rental due and damages done subsequent to February 9, 1925, defendant is not liable.

There remains to be considered the question of liability for the amount of the note. By the terms of the agreement of October 31st the note was due sixty days after October 31st, or on December 30th. The contract was a special guaranty of credit and as such not assignable generally as to future defaults. If on November 21st Balliet had a cause of action on account of the contract of October 31st against the defendant company he might have properly assigned the same. *John A. Tolman & Co. v. Smith,* 159 Wis. 361, 150 N. W. 419; 1 A. L. R. 866. But Whitney was not in default under the Balliet contract. No cause of action existed in favor of Balliet against Whitney on November 21st, hence none could be assigned.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to dismiss the complaint.